UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>v.<br>FIDEL VILLARREAL<br>                          Defendant. | Case No.: 8-cr-1332-JAH-2<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [ECF NO. 532; ECF NO. 541]** |

## I.     INTRODUCTION

Pending before the Court is Defendant Fidel Villareal's ("Defendant" or "Mr. Villareal") motion to reduce his sentence of imprisonment on the basis of (1) the risk posed to Defendant by the coronavirus disease ("COVID-19") in light of his medical conditions, and (2) what Defendant contends is an unusually long sentence. (ECF No. 532; ECF No. 541). Defendant seeks compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). *Id.* The Government opposes the motion. (ECF No. 550; ECF No. 565). Having carefully considered the motion, exhibits, and responses, and for the reasons set forth below, Defendant's motion is **DENIED.**

///

## II. PROCEDURAL BACKGROUND

On April 24, 2008, Defendant Villareal was charged with multiple counts of Bringing in Aliens for Financial Gain, Conspiracy to Bring in Illegal Aliens for Financial Gain, Receiving Bribe by Public Official, Bribery of a Public Official, Conspiracy to Launder Money (International Promotion), Conspiracy to Tamper with a Witness, and Witness Tampering. (ECF No. 1). The case proceeded to trial and the jury convicted Defendant of Conspiracy to Bring in Illegal Aliens for Financial Gain, several counts of Bringing in Illegal Aliens for Financial Gain, Receiving Bribe by Public Official, and Conspiracy to Launder Money (International Promotion). (ECF No. 363). The Court initially sentenced Defendant to 360 months in custody, (*id.* at 2), and Defendant appealed his conviction and sentence. (ECF No. 355). The Ninth Circuit reversed in part, holding that the Court gave an improper jury instruction on the bribery charge, erred by considering departures before calculating the Guideline range, and failed to explain the sentence. (ECF No. 449). After the case was remanded to this Court, the Government dismissed the bribery charge, which negated the need for a new trial. (ECF No. 448).

Instead, the case proceeded to re-sentencing, where Defendant started with a base offense level of 32. From there, the Court applied the following enhancements: (1) + 4 because the "Offense Involved Substantially More Than 100 Aliens"; (2) + 4 for "Dismissed Conduct (Bribery)"; and (3) +2 for "Disruption to Government Function". (ECF No. 498). Taken together, this resulted in an adjusted offense level of 42 and a Guideline range of 360 days to life. (*Id.*). The Court re-sentenced Defendant to a total of 270 months in custody, (ECF No. 494), which was appealed by the Defendant and subsequently affirmed by the Ninth Circuit. (ECF No. 504 at 7; *United States v. Villareal*, 725 Fed. Appx. 515 (9th Cir. 2018)). Defendant then filed a writ of certiorari with the Supreme Court, which was denied on December 3, 2018. *See Villareal v. United States*, No. 18-5468, 139 S. Ct. 592 (2018).

On January 7, 2021, Defendant filed the instant motion seeking compassionate release under 18 U.S.C. §3582(c)(1)(A). (ECF No. 532).[1] Defendant alleges his age and underlying medical conditions place him at significant risk of contracting COVID-19 and suffering severe long-term effects. *Id.* Defendant also argues that his allegedly unusually long sentence is a basis for reduction. Defendant filed a supplemental motion on February 15, 2021 in support of his initial motion for compassionate release (ECF No. 541). On February 22, 2021, the United States of America ("Government") filed a response in opposition to Defendant's motion. (ECF No. 550), to which Defendant replied (ECF No. 558). The Government also filed a response to Defendant's supplemental motion, (ECF No. 565), to which Defendant replied (ECF No. 569). On September 3, 2021, the Government submitted a supplemental document in support of their opposition. (ECF No. 583). The Government argues the Defendant possesses adequate and consistent access to professional health care within the BOP to sufficiently monitor his underlying medical conditions. *Id.* The Government further argues that Defendant's alleged danger to the community and the balance of the 3553(a) factors counsel against reduction. (ECF 550 at 38).

### III. **LEGAL STANDARD**

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Defendant seeks modification of his sentence under the compassionate release provision of 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The amendment to §3582(c)(1)(A) provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's

---

[1] The Court notes that Raul Villareal, Defendant's brother and co-defendant, filed a substantially similar initial motion for compassionate release. The Court has reviewed and considered both motions independently, though some language may be similar, given the near-identical nature of their initial motions and underlying offenses.

decision not to file a motion, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the defendant's facility, "whichever is earlier." 18 U.S.C. §3852(c)(1)(A).

After the Defendant has exhausted his administrative remedies, "a court may modify or reduce the defendant's term of imprisonment 'after considering the factors set forth in [18 U.S.C. §3553(a)]' if the Court finds, as relevant here, that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Rupak*, No. 16-CR-01333-BAS-1, 2022 WL 65171, at *3 (S.D. Cal. Jan. 6, 2022) (citing 18 U.S.C. §3582(c)(1)(A)(i)).

"As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction." *Rupak*, 2022 WL 65171, at *3 (citing *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020)).

## IV. DISCUSSION

In analyzing whether Defendant is entitled to compassionate release under 18 U.S.C. §3582(c)(1)(A), the Court will determine whether the following three requirements are satisfied. First, Defendant must show he has exhausted administrative remedies. Second, Defendant must demonstrate that extraordinary and compelling reasons "warrant… a reduction." 18 U.S.C. §3582(c)(1)(A)(i). Third, Defendant must establish that the 18 U.S.C. §3553 (a) sentencing factors "are consistent with" granting a motion for compassionate release. *United States v. Trent,* 2020 WL 11812242, at *2 (N.D. Cal. 2020).

### A. Exhaustion of Administrative Remedies

A court may reduce a term of imprisonment on a motion from a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. §3582(c)(1)(A).

On October 3, 2020, Defendant submitted an electronic request for compassionate release with the Warden at FCI Gilmer. (ECF No. 532 at 2; *id.* at 16). That request was denied on October 28, 2020. Though it is unclear whether Defendant has properly appealed the Warden's decision,[2] the Government concedes that Defendant has exhausted his remedies. (ECF No. 550 at 27-28). Accordingly, the Court proceeds to review Defendant's motion on the merits. *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (holding that while "§3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked", the rule is "mandatory in the sense that a court must enforce the rule if a party properly raise[s] it, but the objection may be forfeited if the party asserting the rule waits too long to raise the point") (internal quotations and citations omitted); *see also Rupak*, 2022 WL 65171 at *2 (citation omitted) (noting that while Mr. Rupak "failed to exhaust his administrative remedies" because "he did not appeal the denial of his request", "the Government failed to raise this issue in its brief" and thus "the Court proceeds to analyze his substantive request.").

B. **Defendant Has Failed to Carry His Burden to Demonstrate Extraordinary and Compelling Reasons Warranting Reduction**

A court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582 (c)(1)(A). Though the Sentencing Commission's original policy statements are not binding,[3] they are informative and provide illustrative examples of extraordinary and

---

[2] *See United States v. Ngo*, No. 19CR1391 JM, 2022 WL 207704, at *1 (S.D. Cal. Jan. 24, 2022) (holding that Defendant did not exhaust his remedies despite the fact that he made a petition for compassionate to the warden, which was denied, and further explaining that the inmate should have appealed the Warden's decision to the regional director and then to the General Counsel of the BOP); *see also Rupak*, 2022 WL 65171 at *2 (citation omitted) (finding that Mr. Rupak "failed to exhaust his administrative remedies" because "he did not appeal the denial of his request[.]"). Likewise, here, while Defendant has alleged that his request was denied by the warden, he is silent as to any subsequent appeals within the BOP system.

[3] Instead of providing a statutory definition for "extraordinary and compelling reasons", Congress "delegated that responsibility to the U.S. Sentencing Commission", which "has been unable to update its

compelling reasons, such as a "serious physical or medical condition", "serious functional or cognitive impairment", or "deteriorating physical or mental health because of the aging process", any of which should "substantially diminish[h] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Rupak*, 2022 WL 65171 at *3 (citation omitted).

Courts "have routinely denied [motions for compassionate release] absent truly exceptional circumstances", *id.*, and the mere "fact that a defendant is in poor physical health or has chronic health conditions may be insufficient to show extraordinary and compelling reasons for release." *Id.* (citing *United States v. Saccoccia*, 10 F.4th 1, 5 (1st Cir. 2021); *United States v. DeMille*, 465 F. Supp. 3d 1144, 1149 (D. Or. 2020)).

Defendant principally argues that (1) his age and underlying medical conditions, coupled with prison conditions at FCI Gilmer, place him at risk of contracting COVID-19 and suffering severe long-term effects, and that (2) his sentence is unusually long. (ECF No. 532; ECF No. 541). He contends that both reasons constitute "extraordinary and compelling" grounds warranting reduction.

### a. Defendant's Medical Conditions and Conditions at FCI Gilmer Are Not Extraordinary and Compelling Reasons Warranting Reduction Because He is Vaccinated; His Conditions Do Not Sufficiently Diminish His Ability to Provide Self-Care in Prison; and Because There Are Almost No Active Cases at FCI Gilmer

Defendant first argues that he faces a heightened risk of severe symptoms and death from COVID-19 because of his hypertension, high cholesterol, PTSD, high A1C levels, and age, and claims that this constitutes an extraordinary and compelling reason warranting a reduction. (ECF No. 532 at 3). In his supplemental brief, Defendant elaborates only as

---

definition of 'extraordinary and compelling reasons' following passage of the First Step Act that amended § 3582(c)(1)(A)." *Rupak*, 2022 WL 65171 at *3 (citing *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021)). Because the Sentencing Commission has not issued a revised policy statement after the enactment of the First Step Act, courts have generally held that there is no binding policy statement applicable to defense-initiated motions. *See, e.g., United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).

to his hypertension and high cholesterol conditions. (ECF No. 541). The Government contends that Defendant has failed to substantiate "that his age and medical conditions rise to the level of extraordinary and compelling" and that he has similarly failed to demonstrate that "his medical conditions (analyzed individual[ly] o[r] in combination) substantially diminishes his ability to provide self-care within prison, and from which he is not expected to recover[.]" (ECF No. 550 at 29-30) (citations omitted). The Court addresses each of Defendant's conditions in turn.

    1. <u>Defendant's Hypertension/High Blood Pressure Alone is Not "Extraordinary and Compelling" Because Defendant Suffers from Ordinary Hypertension, Not Pulmonary Hypertension</u>

Defendant first argues that his hypertension is a medical condition that places him at an increased risk for severe symptoms or death from COVID-19. (ECF No. 541 at 10). In support of his claim, Defendant cites to several sources that offer differing opinions, ranging from a qualified suggestion from the CDC that individuals with hypertension "might be at increased risk", to opinions that more concretely conclude that "[g]rowing data shows a higher risk of COVID-19 infections and complications in people with high blood pressure." (ECF No. 541 at 10) (citations omitted). Defendant also cites to a string of decisions where courts have found that hypertension is a sufficient basis for granting compassionate release. (ECF No. 541 at 11-12).

However, as the Government notes, courts "considering motions for compassionate release have recognized a distinction between hypertension and pulmonary hypertension, with the latter being a medical condition specific to the lungs." *United States v. Acuna Gonzales*, No. 17CR2970-H, 2020 WL 4732057, at *4 (S.D. Cal. 2020) (citations omitted). Ordinary hypertension, unlike pulmonary hypertension, is not generally recognized as a basis for compassionate release in this district. *See, e.g., id; United States v. Ocon,* No. 13CR2530-JAH, 2020 WL 5106667 at *3 (S.D. Cal. 2020) (denying compassionate release motion from a 50-year old inmate with hypertension and other medical conditions); *United States v. Vignoni,* No. 18CR1352 (S.D. Cal. 2021) (Dkt. No. 57) ("Ordinary hypertension

(high blood pressure) is not one of the conditions identified by the CDC as increasing a person's risk for developing serious illness from COVID-19"). Numerous sister courts appear to have recognized this distinction. *See, e.g., United States v. Barry House*, No. 14-CR-00196-CRB-1, 2020 WL 2557031, at *2 (N.D. Cal. 2020) (explaining that "while pulmonary hypertension is a risk factor, [the Defendant] appears to have essential, and not pulmonary, hypertension."); *United States v. Jeffers*, No. CR13-3033-LTS, 2020 WL 3100842, at *6 (N.D. Iowa, 2020) (observing that "[t]he CDC does not list people with hypertension as those who might be at a higher risk from serious illness from COVID-19. The CDC explains that those with pulmonary hypertension may be at a higher risk, but the medical records do not demonstrate that [the Defendant] suffers from pulmonary hypertension.").

Here, Defendant does not claim that he suffers from pulmonary hypertension and instead suffers from ordinary or essential hypertension. Moreover, the record shows that Plaintiff is receiving care for his hypertension at FCI Gilmer. (ECF No. 550 at Exhs. 4-6). While Defendant does allege that, in some instances, his blood pressure readings were "above normal", (ECF No. 541 at 10), without more, and especially in light of FCI Gilmer's vaccination efforts,[4] Defendant fails to establish that he is unable to provide self-care in custody.

  2. <u>High Cholesterol Does Not Ordinarily Rise to the Level of an "Extraordinary or Compelling" Reason</u>

Next, Defendant argues that his high cholesterol places him at greater risk of severe COVID-19 outcomes. (ECF No. 532 at 3; ECF No. 541 at 10-13). Defendant points to research that "has shown that the level of cellular cholesterol is a core contributor to SARS-CoV-2 viral entity." (ECF No. 541 at 12) (citing Xiuqi Wei, et al, *Hyperlipidemia is associated with the severity of COVID-19*, Journal of Clinical Lipidology, (Apr. 30, 2020) (internal quotations omitted)). The Government argues that high cholesterol is not among

---

[4] *See* Section IV.B.a.5, infra.

the risk factors for COVID-19 and contends that Defendant fails to credibly allege that his high cholesterol diminishes his ability to provide self-care while in custody. (ECF No. 550 at 32). The Government further notes that Defendant's medical records with the BOP reflect that he receives prescription medication for high cholesterol, including Atovastarin, and that "it appears the issue is well-controlled by the BOP." (*Id.*).

While the scientific consensus may change, courts have routinely held that high cholesterol levels, when managed, do not rise to the level of extraordinary and compelling. *See, e.g., United States v. Avalos-Villasenor*, No. 16-CR-02189-GPC, 2021 WL 3534983, at *4 (S.D. Cal. Aug. 11, 2021) (recognizing that while "the scientific consensus may change in the future . . . based on the limited details provided by [Defendant], this Court cannot currently find that his . . . high cholesterol heighten[s] his risk of severe COVID-19 complications . . . to a point that justifies granting compassionate release"); *United States v. Thompson*, 984 F.3d 431 (5th Cir. 2021) (holding that cholesterol and other chronic conditions manageable through medication do not rise to the level of extraordinary and compelling). Here, because the record demonstrates that Defendant's high cholesterol is being actively managed at FCI Gilmer through at least Atorvastatin, (ECF No. 541, Ex. A at 1-2), and because Defendant has not demonstrated that he cannot provide self-care for his high cholesterol, Defendant's argument is unavailing.

   3. <u>Defendant's High Blood Pressure and High Cholesterol Levels in the Aggregate Do Not Constitute an "Extraordinary and Compelling" Reason</u>

Defendant also argues that his high blood pressure in connection with his high cholesterol levels make it more likely that he will suffer serious consequences and cites to the CDC's warning that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." (ECF No. 541 at 12) (citation omitted). While the Court recognizes that Defendant suffers from certain conditions, Defendant's hypertension and high cholesterol are being managed by the BOP, a fact that cuts against a finding of "extraordinary and compelling." *See, e.g., United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be

managed in prison are not a sufficient basis for compassionate release.") (internal quotation and citation omitted).

Even if Defendant's conditions in the aggregate raise the overall risk of symptoms to Defendant, other courts have found that this falls short of an "extraordinary and compelling" reason. *See, e.g., United States v. Thompson*, 984 F.3d 431, 432-434 (5th Cir. 2021) (affirming denial of compassionate release motion made by an inmate with high cholesterol and hypertension, noting that while the inmate's "chronic illnesses place him at a higher risk of severe symptoms, should he contract COVID . . . it is uncertain that he is at a significantly higher risk than is the general inmate population" as "nearly half of the adult population in the United States suffers from hypertension", and "roughly 12% of Americans suffer from high cholesterol.").

    4. <u>Defendant's PTSD, High A1C Levels and Age Are Not a Basis for Compassionate Release</u>

Defendant has likewise failed to carry his burden to demonstrate that his PTSD, age, and high A1C levels are a basis for compassionate release. Though Defendant argues in his initial motion that his PTSD, high A1C levels, and age are a basis for compassionate release (ECF No. 532 at 3), he declines to substantially pursue those arguments in his supplemental brief and fails to sufficiently allege that these conditions rise to the level of "extraordinary or compelling."  Defendant does not credibly allege that his PTSD raises his risk of severe COVID-19 outcomes, and courts have not categorically accepted PTSD as a stand-alone basis for reduction. *See, e.g., United States v. White*, No. 19-CR-00341-GPC, 2021 WL 3493220, at *3-*4 (S.D. Cal. Aug. 9, 2021) (denying compassionate release motion brought by inmate with "lasting injuries from a car accident, degenerative disk disease, arthritis, anxiety, ADHD, PTSD, and scoliosis"); *United States v. McKinney*, No. CR18-096RSM, 2020 WL 6076898, at *4 (W.D. Wash. Oct. 15, 2020) (denying compassionate release motion brought by inmate alleging that "the effects of PTSD and related sleep disorders expose him to heightened risk of severe illness from COVID-19."). As to Defendant's high A1C levels and age, Defendant has not credibly alleged that these

conditions substantially diminish his ability to provide self-care within prison, and that he would not be expected to recover.

> 5. Defendant's General Concern About Prisons and COVID-19 are Unavailing, Especially in Light of His Vaccination Status and the Fact that FCI Gilmer Has Only *One* Active Case of COVID-19[5]

Defendant also contends that prisons are especially unsafe for inmates with underlying conditions in light of COVID-19, and that this is an extraordinary and compelling circumstance warranting compassionate release. (ECF No. 541 at 8-10). Defendant notes that "the BOP death toll stands at 221 inmates and 4 staff members", (ECF No. 541 at 9) (citing *COVID-19 Update,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/), and that in January 2021, "31 people died of COVID-19 while in . . . BOP custody." (ECF No. 541 at 9) (citing *Federal Bureau of Prisons Interactive Dashboards*, DEP'T OF JUSTICE OFFICE OF THE INSPECTOR GENERAL, https://bit.ly/2MBiuZV). Defendant also refers to a study that "found the death rate from COVID-19 in prisons is 39 deaths per 100,000, compared to 29 deaths per 100,000 in the general population." (*Id.*) (citing Brendan Saloner, et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, JAMA NETWORK (July 8, 2020), https://bit.ly/3rm5Qgf).

The Government argues that the measures taken by the BOP and at FCI Gilmer mitigate these concerns and that Defendant's vaccination status further minimizes his risk within the facility. (ECF No. 565 at 7). Defendant responds primarily by noting that he has received only one of two Pfizer doses,[6] (ECF No. 569 at 1), and by arguing that he remains at risk despite his vaccination status because he "remains in a risky prison environment, where experts know vaccines will be less effective" and "[c]ompounding the problem is the vaccine hesitancy amongst prison staff and . . . inmates." (ECF No. 569 at 3-4).

---

[5] As of March 16, 2022. *See COVID-19,* BOP, https://www.bop.gov/coronavirus/ (last visited March 16, 2022).

[6] Defendant received the first dose of the Pfizer COVID-19 vaccine on March 2, 2021. (ECF No. 569 at 1).

First, though the Court is sympathetic to Defendant's concerns about COVID-19, "the same argument applies to any inmate" with underlying conditions, and "[c]onsideration of relief on a motion for compassionate release looks not at the generalized impacts on the movant and others but to the specific effects on him that, in combination, make his circumstances extraordinary and compelling." *United States v. Ngo*, No. 19CR1391 JM, 2022 WL 207704, at *3 (S.D. Cal. Jan. 24, 2022). While there is still an unknown degree of risk to Defendant posed by the possibility of being infected with COVID-19, the speculative possibility provides no basis upon which the Court can conclude that Defendant is "substantially diminishe[d]" in his ability to "provide self-care" at FCI Gilmer. *See United States v. Eberhard,* 2020 WL 1450745, at *2 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement.").

Second, the measures taken by BOP and FCI Gilmer to reduce the risk to inmates, including FCI Gilmer's vaccination efforts, cut against a finding of an extraordinary and compelling reason. Though the BOP statistics referenced by Defendant are indeed concerning, as of March 16, 2022, FCI Gilmer reports ***only 1 total active case*** of COVID-19 within the facility, and *no* cases among inmates. *See COVID-19,* BOP, https://www.bop.gov/coronavirus/ (last visited March 16, 2022).[7] And this is an improvement even from the prior month, where there were four total active cases, and only three cases among the inmates. (*Id.*). Indeed, according to the BOP, 200 staff workers are fully inoculated against the virus, and importantly, 1416 inmates out of a total of 1592

---

[7] Like other district courts in the Ninth Circuit, this Court "takes judicial notice of the BOP coronavirus update" and considers the number of cases reported by the BOP. *United States v. Laborin*, 2020 WL 5909493, at *1, n.3 (E.D. Cal. Oct. 5, 2020); *United States v. Miles*, No. 2:17-CR-00127-KJM, 2020 WL 3256923, at *1, n.1 (E.D. Cal. June 16, 2020) (explaining that like "other courts, this court takes judicial notice of the information presented by the BOP at https://www.bop.gov/coronavirus/") (citation omitted); *see also United States v. Ortiz,* No. 2:15-CR-00124 KJM, 2021 WL 1089949, at *5 (E.D. Cal. Mar. 22, 2021).

inmates are fully inoculated. (*Id.*) (last visited March 16, 2022). And other federal courts have repeatedly declined to find that conditions at FCI Gilmer rose to the level required for compassionate release, even when active case counts were higher than at present. *See, e.g., United States v. Peterson,* No. 17-CR-20243, 2021 WL 1238132, at *3 (E.D. Mich. Apr. 2, 2021) (noting that "there is currently no severe outbreak of COVID-19 at FCI Gilmer"); *United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (describing ten active cases as a "low number" and noting "the other operational changes that the facility has implemented to prevent the spread of the disease and the commencement of the COVID-19 vaccine distribution" in deciding to deny inmate's request for compassionate release).

Third, Defendant's argument that he has received only one of two Pfizer doses, (ECF No. 569 at 1), appears to be moot, as the Government's September 3, 2021 Supplemental Declaration from Theresa T. Talplacido demonstrates that Defendant has since received his second dose. (ECF No. 583 at 3). The Court agrees with other courts in this district and the Seventh Circuit that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 802 (7th Cir. 2021); s*ee also, United States v. Del Rosario Martinez,* 524 F. Supp. 3d 1062, 1066 (S.D. Cal. 2021) (rejecting compassionate release motion from inmate claiming that they "suffe[r] from several serious health conditions, including obesity, hypertension, anemia, osteoporosis, and depression" because Defendant's "vaccination significantly mitigates the risk that [they] will contract COVID-19, much less become seriously ill.") (internal quotation marks omitted) (quoting *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021)).

It is Defendant's burden to demonstrate an "extraordinary and compelling" basis for reduction, *Ngo*, 2022 WL 207704, at *2 (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)), and Defendant has failed to make a showing that his medical conditions, combined with the level of treatment he is currently receiving and the conditions at FCI

Gilmer, qualify as "extraordinary or compelling" reasons for release under 18 U.S.C. 3582(c)(1)(a) given that Defendant is fully vaccinated and FCI Gilmer has *no* active cases of COVID-19 among its inmates.

### b. Defendant's Sentence is Not an Extraordinary and Compelling Circumstance Because It Falls Within the Guideline Range and was Affirmed by the Ninth Circuit

Defendant next argues that his sentence, which he contends is unusually long, constitutes an "extraordinary and compelling reason[n]" that warrants a reduction. (ECF No. 532 at 6-8; ECF No. 541 at 14-20). Specifically, Defendant notes that his sentence is "almost 10 years (119 months) higher than the high-end of" his pre-enhancement Guideline range of 121-151 months, and that his "sentence is also far higher than the average sentence imposed for the crimes he committed." (ECF No. 541 at 16). As to the latter point, Defendant notes that in 2019, the "average sentence for all alien smuggling offenders was 14 months" and the "average sentence for money laundering offenders was 70 months." (ECF No. 541 at 16) (citations omitted). Defendant also offers comparisons to other cases involving Border Patrol agents. (ECF No. 541 at 17-18).

Taking his arguments in turn,[8] the Court is not persuaded by the disparity between Defendant's pre-enhancement Guideline range and his post-enhancement guideline range. Indeed, the disparity points to the seriousness of circumstances surrounding Defendant's conduct and the resultant upward enhancements. That Defendant's conduct has resulted in aggravating factors that have in turn resulted in a longer sentence for Defendant is not a basis for compassionate release. Moreover, though Defendant separately argues that the

---

[8] The Court notes that in Defendant's reply in support of his supplemental motion, (ECF No. 558), Defendant argues that because the Government did not respond to the substantive arguments and statements of law set forth in the supplemental motion, especially with respect to Defendant's claim of an unusually long sentence, the "Court should treat the government's non-response . . . as a concession." (ECF No. 558 at 1). Though a party's failure to respond *may* be treated as a concession of a point, they need not be, and the Court declines to do so here. *See, e.g., Rios v. New York & Co., Inc.*, No. 217CV04676ODWAGRX, 2017 WL 5564530, at *5 (C.D. Cal. Nov. 16, 2017) (explaining that "a court *may* treat a party's failure to respond to particular arguments in a motion as a concession of the point" but "declin[ing] to do so") (emphasis added). As discussed above, it is Defendant's burden to establish eligibility for a sentence reduction. *Rupak*, 2022 WL 65171, at *3.

various upward enhancements have cumulatively resulted in an unusually long sentence, the same upward enhancements were affirmed on appeal. *See United States v. Villareal*, 725 Fed. Appx. 515 (9th Cir. 2018).  In the same vein, though Defendant cites to three cases[9] involving Border Patrol agents that used their position to traffic in drugs to argue that his sentence was disproportionately higher despite similar or less egregious conduct, Defendant's sentence was affirmed on appeal.  And indeed, the Ninth Circuit rejected Defendant's unwarranted sentencing disparity claim.  (*Id.* at 2).  Moreover, the underlying charges and upward enhancements in the instant case are different than in the three cited cases.

The Court is similarly unpersuaded by the comparison of Defendant's sentence to the average sentence imposed for the crimes he committed, as the averages are stripped of any context.  Defendant's participation in an enterprise to bring in approximately a thousand illegal aliens is not, by any means, comparable to the average alien smuggler. Such comparisons also fail to account for the callousness with which Defendant treated his passengers.  (Sentencing Hearing, Reporter's Transcript, April 5, 2016 at 19-20). Likewise, though the average sentence for money laundering offenses may be 70 months in 2019, those sentences do not take into consideration the specific facts at play in Defendant's case.

### C. **A Reduction Is Inconsistent With the Section 3553(a) Factors**

Even if Defendant's motion was supported by a showing of extraordinary and compelling reasons for compassionate release, and it is not, Defendant must persuade the court that a reduction in sentence would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. §3553(a).  *See* 18 U.S.C. §3582(c)(1)(A).  Those factors include, among others, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness

---

[9] Specifically, Defendant references *United States v. Yanez*, 19-CR-00923-JAS, (D. Ariz.); *United States v. Lopez*, 17-CR-0086-DMS, Doc. 87 (S.D. Cal.); and *United States v. Michel et al.*, 17-CR-01733-DCB-JR (D. Ariz.).  (ECF No. 541 at 17-18).

of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct. *See* 18 U.S.C. §3553(a).

Defendant contends that he has been successfully rehabilitated while serving his sentence, and that a "reduced sentence would still promote respect for the law and provide just punishment." (ECF No. 541 at 21-22). Defendant has also experienced difficulties while in custody due in part to various lockdown-related procedures and is concerned about the health of his elderly parents, who are 77 and 72 years old. (*Id.* at 22). If released, Defendant claims that he plans to live with and care for his parents and has a job "lined up at a local Dixieline supermarket warehouse". (*Id.*). More generally, Defendant argues that his "conduct in this case was an aberration in an otherwise law-abiding life" and that his time in custody has helped him revert to his previous, allegedly law-abiding ways. (ECF No. 541 at 3-4).

The Court finds that the balance of the §3553(a) factors counsel against granting Defendant's request.[10] The Court notes that Defendant has been convicted of serious offenses, with equally serious enhancements imposed pursuant to the Sentencing Guidelines. The Defendant conducted these serious offenses while on duty, in uniform, and utilizing a law enforcement vehicle to smuggle aliens – in the daytime – and while serving as a supervisor in his area of responsibility. A sentence that speaks to specific deterrence as well as to general deterrence to other law enforcement officers from so brazenly violating the public trust and oath of office were significant factors considered in arriving at the sentence imposed. Taking into consideration the nature and circumstances

---

[10] As discussed earlier, the Court is unpersuaded by Defendant's argument regarding the disparity between Defendant's sentence and the sentence of other Defendants.

of the offenses, and the history and characteristics of the defendant, the Court finds they do not weigh in favor of compassionate release.

Indeed, reducing Defendant's sentence from 270-months to approximately 160-months "does not adequately reflect the seriousness of his actions." *United States v. Morales*, No. 1:17-CR-00274-DCN-1, 2021 WL 203301, at *3 (D. Idaho Jan. 20, 2021). And even though Fidel has served approximately 55% of his sentence, the significant weight of the evidence, the breadth of the criminal enterprise reaching back to the Country of Brazil, the involvement of a foreign chief of police, the obstruction of justice, and the other multiple and egregious criminal episodes committed by this former Supervisor with the United States Border Patrol counsel stronger against granting a compassionate release.

Moreover, modifying his sentence when he has served approximately half of his sentence "would not promote respect for the law and would not act as a deterrent." *United States v. Lathum*, No. 17CR2861(3), 2021 WL 5989930, at *2 (S.D. Cal. Dec. 17, 2021). Lastly, while the Court is sympathetic to Defendant's concern for his parents, federal courts have routinely denied compassionate release motions made on this basis. *See, e.g., United States v. Valencia-Cortez,* No. 16CR0730-H, 2022 WL 36513, at *6 (S.D. Cal. Jan. 3, 2022) (Defendant's desire to "care for and be with his ailing mother . . . is not a basis, by itself, to warrant compassionate release") (citations omitted); *United States v. Baye*, 464 F. Supp. 3d 1178, 1190 (D. Nev. 2020) ("While the Court sympathizes with Defendant regarding his mother's deteriorating condition, it also agrees with other courts in concluding that such a circumstance is not extraordinary[.]").

Defendant's characterization of his conduct as "aberrant" is inconsistent with the record. (ECF No. 541 at 20). Under the Sentencing Guidelines, the Court may depart downward under its policy statement for aberrant behavior where the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. *See* Section 5K.20. While aberrant behavior considerations may have less stringent standards when considered under a Section

17

8cr1332-JAH-2

3553(a) analysis, it strains reality that Defendant's overall criminal conduct in this case can be considered aberrant. An example of aberrant conduct for section 3553(a) purposes is one "involving [a] driver of an armored truck who, as the result of a bank error, had a bag containing $80,000 in cash literally dumped in his lap" and "[i]n a spontaneous act the driver temporarily yielded to the temptation to keep the money, but shortly thereafter confessed his wrongdoing, returned his share of the loot, and cooperated fully in the subsequent investigation." *United States v. Fairless*, 975 F.2d 664, 667 (9th Cir. 1992) (citations omitted).

Defendant's conduct here is emphatically distinguishable and is *not* aberrant. Defendant, along with his co-conspirators, engaged in a complex scheme to smuggle approximately a thousand aliens from the country of Brazil through Mexico, while abusing his status as a Border Patrol Agent. Indeed, when transporting the aliens, Defendant demonstrated reckless disregard for the individuals being smuggled, with one injured passenger noting that Defendant drove the vehicle like he was "carrying a load of pigs[.]" (Sentencing Hearing, Reporter's Transcript, April 5, 2016 at 19-20). Defendant's behavior is demonstrably distinguishable from cases cited by him which involved aberrant behavior, and his attempt to cast his months-long criminal enterprise as aberrant is unpersuasive.

Finally, the Court also considers "the need for the sentence imposed . . . to provide the defendant . . . medical care . . . in the most effective manner." 18 U.S.C. §3553(a)(2)(D). Defendant's medical records show that he continues to receive care for his hypertension and high cholesterol, and the Government has also presented evidence that the BOP has taken several measures to protect inmates' health, including, but not limited to, FCI Gilmer's vaccination efforts.[11] As a result, the Court finds that the need to provide effective medical care under §3553(a)(2)(D) does not weigh in favor of a reduction in sentence.

///

---

[11] *See* COVID-19, BOP, https://www.bop.gov/coronavirus/ (last visited March 16, 2022). According to the BOP, 200 staff workers are fully inoculated against the virus, and importantly, 1416 inmates out of a total of 1592 inmates are fully inoculated, with efforts ongoing.

D. **Danger to the Community**

In ultimately deciding whether Defendant should be released under §3582, the Court must take into consideration whether Defendant poses a danger to the community. *See* U.S.S.G. § 1B1.13(2) (Compassionate release is only warranted where "[t]he defendant is not a danger to the safety of any other person or to the community[.]")[12]  In making this assessment, courts consider the factors in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the charged offense, (2) the weight of the evidence, (3) the defendant's history, and (4) the nature of any danger to the community or individual. *See* 18 U.S.C. § 3142(g)(1)-(4).

Defendant contends he is not a danger to the community because the nature of the circumstances of Defendant's offenses, while serious, were non-violent. (ECF No. 541 1at 20).  Defendant further argues that the conduct was aberrant, noting that he lived a "law-abiding life" notwithstanding his offenses. (*Id.*).  Defendant also points to his disciplinary record while incarcerated and the BOP's classification of Defendant as having a "minimum risk recidivism level."  (ECF No. 651 at 21).  The Government argues that the "egregious nature of" Defendant's offense "and the numerous aggravating factors" weigh against early release.  (ECF No. 550 at 40-41).

The Court agrees with the Government.  Taking into consideration the (1) the nature and circumstances of the charged offense, (2) the weight of the evidence, (3) the defendant's history, and (4) the nature of any danger to the community or individual, and in particular the first and fourth factors, the Court finds that Defendant would continue to

---

[12] Though the requirement to consider dangerousness typically comes from §1B1.13(2), the Ninth Circuit held in *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) "that there are no applicable Sentencing Commission policy statements for compassionate release motions *filed by a defendant*." *United States v. Motalebi*, No. 2:17-CR-34 JCM (NJK), 2021 WL 2583548, at *2 (D. Nev. June 23, 2021) (describing the holding in *Aruda*, 993 F.3d at 802).  While §1B1.13(2) may no longer be binding, it may still "inform a district court's discretion on compassionate release motions[.]" *Id.* (quotations omitted).  And "courts that have found the guideline no longer authoritative still require defendants to demonstrate that they are not dangers to society." *United States v. Baye*, 464 F. Supp. 3d 1178, 1190 (D. Nev. 2020) (citing *United States v. Cantu*, 423 F. Supp. 3d 345, 352–53 (S.D. Tex. 2019)).  Accordingly, the Court considers dangerousness here.

present a danger to other persons and the community, though the Court need not reach this conclusion in light of Defendant's failure to demonstrate "extraordinary and compelling reasons" warranting reduction or that a reduction would be consistent with the 3553(a) factors.

V. **CONCLUSION**

For the reasons set forth above, Defendant's motion for reduction of sentence pursuant to the compassionate release provision of §3582 (c)(1)(A) is DENIED.

**IT IS SO ORDERED.**

DATED: March 24, 2022

_____
HON. JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE