1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  FIDEL VILLARREAL,                    Case Nos.: 8-cr-1332-JAH-2; 19-cv-2306-
                                         JAH
12                        Petitioner,
                                         **ORDER:**
13  v.

14                                       **(1) DENYING MOTION TO**
15  UNITED STATES OF AMERICA,            **VACATE UNDER 28 U.S.C. § 2255**
                                         **(ECF No. 506); AND**
16                        Respondent.
17                                       **(2) DENYING MOTION FOR**
                                         **EVIDENTIARY HEARING (ECF No.**
18                                       **616).**

19

20                            **INTRODUCTION**

21        On December 2, 2019, Petitioner Fidel Villarreal ("Petitioner" or "F. Villarreal" or

22  "Fidel"), proceeding pro se, filed a petition to vacate, set aside, or correct his sentence

23  pursuant to 28 U.S.C. § 2255 and requested this Court to order additional evidentiary

24  discovery, which the Court construes as a request for an Evidentiary Hearing. ECF No.

25  506 ("Petition" or "Pet." or "Motion"). Respondent United States of America

26  ("Respondent") filed a Response in Opposition on February 22, 2021. ECF No. 546

27  ("Opp'n"). Petitioner did not file a Reply. On August 3, 2023, Petitioner filed a separate

28

Motion for an Evidentiary Hearing.[1]  ECF No. 616.  The Government did not file an opposition.  For the reasons set forth below, the Court **DENIES** Petitioner's Motion to vacate, set aside, or correct his sentence and **DENIES** his request for an Evidentiary Hearing.

## **FACTUAL BACKGROUND**

On April 24, 2008, Petitioner was charged with multiple counts of Bringing in Aliens for Financial Gain, Conspiracy to Bring in Illegal Aliens for Financial Gain, Receiving Bribe by Public Official, Bribery of a Public Official, Conspiracy to Launder Money (International Promotion), Conspiracy to Tamper with a Witness, and Witness Tampering.  ECF No. 1.  The case proceeded to trial and the jury convicted Petitioner of Count 1 (Conspiracy to Bring in Illegal Aliens for Financial Gain), Counts 2-12 (Bringing in Illegal Aliens for Financial Gain), Count 13 (Receiving Bribe by Public Official), and Count 15 (Conspiracy to Launder Money Through International Promotion).  ECF No. 363.  The Court initially sentenced Petitioner to 30 years (360 months) in custody, (*id.* at 2), and Petitioner appealed his conviction and sentence to the Ninth Circuit.  ECF No. 355.  The Ninth Circuit reversed in part, holding that the Court gave an improper jury instruction on the bribery charge and, as a result, vacated the bribery convictions, erred by considering departures before calculating the guideline range, and failed to adequately explain the sentence in light of 18 U.S.C. § 3553(a) factors.  ECF No. 449 (*United States v. Villarreal*, 621 Fed. Appx. 883 ("*Villarreal I*")).  After the case was remanded to this Court, the Government dismissed the bribery charge (Count 13), thereby negating any need for a new trial.  ECF No. 448.

---

[1] The Court notes that Raul Villarreal, Petitioner's brother and co-defendant, filed a substantially similar 2255 motion and request for evidentiary hearing.  *See* ECF Nos. 505, 615.  The Court has reviewed and considered both motions independently despite the near-identical nature of certain of their arguments and underlying offenses.

The case proceeded to re-sentencing, where Petitioner started with a combined offense level of 32.  ECF No. 498 (Apr. 5, 2016 Sentencing Hearing).  From there, the Court applied the following enhancements:  (1) plus-four because the "Offense Involv[ed] Substantially More Than 100 Aliens"; (2) plus-four for "Dismissed Conduct Involving Bribery"; and (3) plus-two for "Disruption of Government Function."  *Id.*  Taken together, these enhancements resulted in an offense level of 42 and a Guideline range of 360 months to life in prison.  *Id.*  Taking into consideration the guidelines and the factors under 3553(a), the Court re-sentenced Petitioner to a total of 270 months in custody, (Apr. 5, 2016 Sentencing Hearing; ECF No. 499 (Apr. 11, 2016 Sentencing Hearing)), which was appealed by the Petitioner and subsequently affirmed by the Ninth Circuit in *United States v. Villarreal*, 725 Fed. Appx. 515 (9th Cir. 2018) ("*Villarreal II*").  ECF No. 504.  Petitioner then filed a writ of certiorari with the Supreme Court, which was denied on December 3, 2018.  *See Villarreal v. United States*, No. 18-5468, 139 S. Ct. 592 (2018).  Petitioner filed this 2255 Motion on December 2, 2019, one day before the one-year statute of limitations was set to expire.  ECF No. 506.

## LEGAL STANDARD

A federal prisoner may request relief pursuant to 28 U.S.C. § 2255 to vacate, correct, or set aside a sentence when the sentence was imposed in violation of the United States Constitution or federal law, the court did not have jurisdiction to impose the sentence, the sentence was in excess of the maximum allowed by law, or the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  A court may dismiss a Section 2255 motion when it "plainly appears" from the motion, attached exhibits, and the record of prior proceedings that the petitioner is not entitled to relief under Rule 4(b) of the Rules Governing § 2255 Proceedings.

## DISCUSSION

Petitioner raises five grounds for relief in his Section 2255 Motion, alleging:  (1) ineffective assistance of counsel ("IAC"); (2) prosecutorial misconduct (including *Brady*

3

1   violations); (3) due process violations; (4) judicial bias; and (5) an unlawful and
2   unconstitutional sentence. Pet. at 18.[2]

3   ## I.    IAC Claims

4   To make a claim of IAC, Petitioner must show that counsel's performance did not
5   meet the standard of "reasonably effective assistance," and that counsel's deficient
6   performance prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
7   There is a "strong presumption" that counsel's conduct was reasonable. *Id.* at 689.
8   Showing an effect on the proceedings is not enough. *Id.* at 694. Petitioner must show that
9   there is a reasonable probability that the outcome would be different but for counsel's
10  performance. *Id.* While the Sixth Amendment imposes a duty to investigate on counsel,
11  "the investigation need not be exhaustive" and the scope "depends on such facts as the
12  strength of the government's case and the likelihood that pursuing certain leads may prove
13  more harmful than helpful." *Id.* at 680-681.

14  Petitioner alleges that representation by his attorney, Ms. Zenia Gilg, during his trial
15  and sentencing fell below the "reasonably effective assistance" standard, asserting that his
16  attorney failed to:  (1) move to compel, investigate, or suppress a video of Petitioner
17  handing a bag to an agent in a store (Pet. at 23); (2) move to suppress, dismiss, or make
18  any *Jencks* demands regarding trial testimony of a Customs and Border Patrol ("CBP")
19  agent based on a lost video of aerial footage (*id.* at 24); (3) investigate or subpoena video(s)
20  and a daily "hit list" of activity (*id.* at 25-26); (4) object to guideline calculations (*id.* at
21  27); and (5) impeach Hector Cabrera's testimony (*id.* at 38). Petitioner contends that, taken
22  together, these alleged failures caused him prejudice that require this Court to vacate his
23  sentence and resentence him. *Id.* at 24, 27, 31. The Court will discuss each of Petitioner's
24  IAC claims in turn.
25  ///

26  _____

27
28  [2] Unless otherwise stated, page numbers referenced herein refer to page numbers generated
    by the CM/ECF system.

A.    <u>Store Video</u>

Petitioner alleges that his counsel failed to compel, investigate, or suppress a video that supposedly depicts him inside a store handing a bag to another agent. *Id.* at 23. According to Petitioner, he "only know[s] about the existence of this video because [his] brother, Raul, was placed in lock-down custody (SHU), where a co-defendant (who *had* seen this video in discovery) described what was in it." *Id.* (emphasis in original). Petitioner contends that the "bag contained food, and not a cash payout for illicit activities (as it was portrayed)." *Id.* Petitioner claims that his counsel's failure to compel, investigate, or suppress the video resulted in ineffective assistance of counsel. *Id.* at 24. The Government, however, contends that there is no evidence that any video was presented at trial showing Fidel hand a bag to another agent at a store. Opp'n at 27. In fact, according to the Government, no evidence exists to even suggest that any witnesses testified about the alleged video or that any of the prosecutors made any inference to the video. *Id.* at 27-28 (citing Ex.1 at. 2; Ex. 2 at 2; Ex. 3 at 2; Ex. 4 at 2). As a result, the Government argues that Petitioner fails to demonstrate a deficient performance by counsel or prejudice. *Id.* at 28.

The Court agrees with the Government and finds that Petitioner's argument regarding the "store video" does not meet either prong of the *Strickland* test. First, Petitioner fails to show that counsel's performance did not meet the standard of "reasonably effective performance." *Strickland*, 466 U.S. at 687. Aside from Petitioner's conclusory statement that "there was a video, which was used to prosecute myself and my brother," Petitioner fails to show that the Government had possession or control of the alleged video such that defense counsel could have compelled or investigated the video. Pet. at 24; *see United States v. Desage*, 229 F. Supp. 3d 1209, 1214 (D. Nev. 2017) (tax records not in the government's possession were not discoverable or otherwise subject to investigation). Second, Petitioner fails to demonstrate how his counsel's alleged failure to compel, investigate, or suppress the video prejudiced Petitioner such that there is a reasonable probability that the outcome of the trial would have been different *but for* counsel's

5

performance. Although Petitioner argues that the video was "referenced by several witnesses, who were allowed to view [the video]," he fails to explicitly cite to any alleged trial testimony or explain how (or why) the references by the unnamed witnesses prejudiced him. Pet. at 23. Further, Petitioner's suggestion that the video referenced by several witnesses portrayed "a cash payout for illicit activities" is an inference to be made by the jury, not the Court. *Id.*; *see McNally v. Frauenheim,* 2019 WL 7404836, at *23 (C.D. Cal. Nov. 21, 2019), *report and recommendation adopted*, 2020 WL 32538 (C.D. Cal. Jan. 2, 2020) ("a trial court must be careful not to invade the jury's province as fact-finder"). Without more, this Court finds that Petitioner's IAC claim based on the store video fails.

### B.    Aerial Footage Video

Petitioner also alleges that his counsel failed to move to suppress, object to, or make any *Jencks* demands based on trial testimony from witnesses, such as Agent Riches, regarding aerial footage depicting a "Kilo Unit" traversing an area with a supposed delivery of illegal aliens that was allegedly lost by the prosecution. Pet. at 24-25. Petitioner maintains that this, in combination with other deficiencies, constituted IAC that had the cumulative effect of prejudicing his conviction and sentence. *Id.* at 25. The Government contends, *inter alia*, that Petitioner's IAC claims with respect to the lost video are without merit because the Court previously and properly ruled that the lost video was not exculpatory. Opp'n at 29. And, in any event, the Government asserts that Petitioner's counsel was not deficient because counsel was given "appropriately wide latitude" with which to challenge the testimony of the Government trial witnesses involved in the surveillance of the smuggling event and the agents' failure to preserve the videotape.[3] *Id.* at 30-31. The Court agrees with the Government.

---

[3] And, even if the lost evidence was potentially useful, the Government asserts its failure to preserve the video did not amount to a due process violation because the agents did not act in bad faith. Opp'n at 30.

At trial, Petitioner's counsel, Attorney Gilg, learned for the first time of aerial surveillance footage from June 9, 2005 during Agent Caraway's cross examination. Attorney Gilg further questioned Agent Caraway as to how he observed the border patrol vehicle on that day:

> Q. Were you looking through binoculars?
>
> A. I was looking through a video camera with a zoom lens.
>
> Q. Okay.  And did you – I am assuming with the video camera there's some video?
>
> A. There was video taken, yes.
>
> Q. And do you know what happened to that video?
>
> A. I do not.

ECF No. 381 (July 10, 2012 Trial Tr.), at 633[4]:4-9; 636.  After learning of the video, Attorney Gilg requested that the video and any corresponding notes be turned over.[5]  It was later determined that the video was lost.  ECF No. 382 (July 11, 2012 Trial Tr.), at 643 (Attorney Gilg noting "I've been informed this morning that there is no video").  In the Court's view, because there was no video to produce, Petitioner's IAC allegation cannot be contingent on suppressing or objecting to a non-existent video, but rather must be premised on the trial testimony regarding the video.  However, Petitioner's insistence that any motion to suppress or an objection to trial testimony based on the lost video would succeed is purely speculative and based on nothing more than hindsight.  The Ninth Circuit precludes such speculation and has explained that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

---

[4] Any pages referenced from the trial transcript reflect the actual page of the transcript in its entirety, not the page number as reflected in CM/ECF.

[5] July 11, 2012 Trial Tr. at 643:12-22 ("Well, your Honor, it was surprising to hear Officer Caraway describe the fact that he had taken a video, because we had not seen any videos.  And so, **I think our request was to have that turned over, along with any notes that he may have taken during the time of his surveillance**.") (emphasis added).

hindsight[.]" *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).  That a motion to suppress or an objection based on trial testimony regarding the aerial surveillance video might have been reasonable falls short of establishing deficient performance by counsel.  *United States v. Reyes*, 2012 WL 4339070, at *4 (S.D. Cal. Sept. 19, 2012) (explaining "a Fourth Amendment motion to suppress in this case might seem reasonable; yet this is not the standard applied to consider an attorney's performance").  Because the *Strickland* test requires that both prongs of the test be met, the Court need not address the prejudice prong.  *See Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) ("Because failure to meet either prong is fatal to [defendant's] claim, there is no requirement that we 'address both components of the inquiry if the defendant makes an insufficient showing on one.'") (quoting *Strickland*, 466 U.S. at 697).

Petitioner's additional argument that his counsel's failure to make a *Jencks* demand amounts to IAC is equally unpersuasive.  The Jencks Act, as promulgated by 18 U.S.C. § 3500 *et seq.*, requires a district court, on motion of the defendant, to order the government to produce any "statement" of the witness in possession of the government that relates to the subject matter of the witness's testimony.  18 U.S.C. § 3500(b).  A statement is defined as "a written statement made by said witness and signed or otherwise adopted or approved by him[.]"  18 U.S.C. § 3500(e)(1).  But Petitioner's argument is belied by the record itself, which indicates that Petitioner's counsel made an unambiguous *Jencks* request at trial:

> Attorney Gilg:  Your Honor, may I raise one issue before Agent Caraway leaves?  I think **under Jencks we would be entitled to any of his notes.** I would like for him to be able to produce those for the purpose of completing cross examination.
>
> The Court:  All right.  Sir, Agent Caraway, if you have notes that you have not turned over, could you produce those for testimony in the morning.  Any notes regarding this investigation . . . .

July 10, 2012 Trial Tr. at 638: 3-12 (emphasis added).  The following day, the Government indicated that it did not have any notes in its possession in response to Attorney Gilg's

*Jencks* demand.  July 11, 2012 Trial Tr., at 643:24-644:2 ("There are no notes that Agent Caraway took on the surveillance on June 9th").  To be sure, Attorney Gilg confirmed the same during her cross-examination of Agent Caraway:

> Q: . . . Did you take notes on June 9th, 2005?
>
> A. No, Ma'am, I did not.
>
> Q. At some point – well, did you write any reports relating to your aspect of the investigation on June 9th, 2005?
>
> A. No, Ma'am, I did not.

ECF No. 403 (July 12, 2012 Trial Tr.), at 664.  Under these circumstances, the Court finds that Attorney Gilg did exactly what she should have done:  She requested the video upon learning of its existence, she made a *Jencks* demand for any corresponding notes, and she questioned Agent Caraway regarding both the lost video and his lack of notes. Accordingly, because Petitioner fails to demonstrate deficient performance by his counsel, the Court need not address the prejudice prong.  *See Gonzalez*, 667 F.3d at 987.

Lastly, the Court notes that Petitioner's argument with respect to his attorney's alleged failure to suppress or object to testimony based on "lost evidence" (*i.e.*, video evidence of aerial footage) or make a *Jencks* demand specifically from Agent Riches falls flat.  Indeed, during trial, both Attorney Gilg and Attorney Nick (Raul's counsel) confirmed that on January 20 and 21, 2006 (the salient dates surrounding Agent Riches's cross-examination) Agent Riches was using only binoculars, not a camera during his surveillance of CBP vehicles.[6]  As a result, the Court finds Petitioner's argument with respect to Agent Riches without merit.

///

---

[6] *See, e.g.*, ECF No. 410 (Trial Tr. July 24, 2012) at 2085:20-21 (Attorney Gilg cross examining Agent Riches "Q.  And, yet, you brought no camera with you?  A.  I did not, no."); *id.* at 2077:6-9 (Attorney Nick cross examining Agent Riches "Q.  Now . . . on this day that you saw K-2106 from the air, did you see the number with your binoculars or naked eye?  A.  Binoculars.").

1    **C.    Failure to Investigate**

2    Petitioner asserts that his trial counsel failed to investigate allegedly exculpatory

3    evidence of a daily "hit list" of activity from the CBP data center.  Pet. at 25.  Petitioner

4    alleges that "a lack of hits would show that nothing traversed [areas close to the border] in

5    the time-frame the government alleged [he] was transporting illegal aliens[.]" *Id.* at 25-26.

6    According to Petitioner, his attorney "refused to subpoena the[] hit lists, in favor of other

7    strategies," thereby amounting to IAC.  *Id.* at 26.  The Government, however, contends

8    Petitioner's assertion that the hit lists would be favorable is based entirely on speculation,

9    and regardless, there is no reasonable possibility that introducing the hit lists would have

10   altered the outcome of the trial.[7]  Opp'n at 31-33.  The Government further argues that

11   counsel's failure to subpoena the hit lists was not a constitutional violation because of the

12   minimal relevance of the "hit lists" and questionable reliability of the sensor records.

13   Opp'n at 33.

14   Under *Strickland*, the court must defer to trial counsel's strategic decisions.  Indeed,

15   "[a] reasonable tactical choice based on an adequate inquiry is immune from attack under

16   *Strickland*."  *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997) (explaining that

17   "[c]ounsel knew about the evidence and looked into it, but chose as a tactical matter not to

18   use it").  To be deemed a constitutionally adequate choice, the tactical decision must have

19   either been made after counsel performed a reasonable investigation or made a reasonable

20   decision deeming a particular investigation is unnecessary.  *Correll v. Ryan*, 539 F.3d 938,

21   948 (9th Cir. 2008); *see also Strickland*, 466 U.S. at 690-91 ("strategic choices made after

22   less than complete investigation are reasonable precisely to the extent that reasonable

23   professional judgments support the limitations on investigation").

24

25   ――――――――――――――――

26   [7] And in any event, the Government posits that it is questionable whether the "hit list"

27   records would have been maintained for more than five years after the smuggling events.
     Opp'n at 31.  The Government also contends that bringing in evidence of sensory activity

28   would have caused serious concerns about national security.  Opp'n at 31-32.

The Court finds that defense counsel's tactical decision not to investigate the "hit lists" was reasonable. The litany of evidence presented at trial—which included numerous accounts of Petitioner's involvement in smuggling events—demonstrated that this was an egregious case of "pervasive and extensive" criminal activity. Apr. 5, 2016 Sentencing Hearing at 25. Thus, given the voluminous evidentiary record, containing hundreds of exhibits over the course of the 23-day trial, it was reasonable for counsel not to investigate every potential piece of evidence, particularly pieces of potential evidence with minimal relevance and questionable reliability. *See Wiggins v. Smith*, 539 U.S. 510, 512 (2003) (explaining that *Strickland* does not require "counsel to investigate every conceivable line of mitigating evidence").

Even taking Petitioner's argument at face value—that the hit lists would have shown a lack of sensor hits—that alone would not have been exculpatory given that Petitioner was an experienced Border Patrol Agent who could have directed (or instructed others to direct) groups of illegal aliens to cross the border in such a manner as to intentionally *avoid* the sensor locations. *See* Opp'n at 32 (citing Ex. 3 at 2) ("the lack of sensor hits for a particular day would not [have] necessarily been 'exculpatory' because, as experienced Border Patrol Agents with knowledge of sensor locations or ability to gather the knowledge of sensor locations, the Villarreals could have directed the groups to avoid areas where sensors were located"). Thus, based on the evidence presented at trial, the Court finds that defense counsel exercised reasonable professional judgment in deeming the investigation of hit list activity unnecessary. *See, e.g.*, *Mickey v. Ayers*, 606 F.3d 1223, 1242 (9th Cir. 2010) ("when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable") (citing *Strickland*, 466 U.S. at 691).

With respect to prejudice, the Court agrees with the Government and finds that Petitioner fails to demonstrate that bringing in the "hit lists" would have changed the outcome of the trial or his sentencing. Petitioner does not allege to have reviewed any hit lists and therefore his argument is based entirely on speculation as to what a "hit list" would

have or could have shown.  But speculation alone is insufficient to show prejudice.  *See, e.g.*, *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (speculation about what certain evidence could have demonstrated is insufficient to demonstrate prejudice under IAC); *Saucedo v. Brazelton*, 2015 WL 5769618, at *9 (N.D. Cal. Oct. 2, 2015) ("speculation is not sufficient to show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'") (citing *Strickland*, 466 U.S. at 694).

Finally, the Government asserts that Petitioner's argument regarding the hit list fails to consider the *Pinkerton* theory of vicarious liability—which allows defendants in criminal conspiracy cases to be found guilty of reasonably foreseeable substantive crimes committed by their co-conspirators.  *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). However, the Court need not address the Government's argument under *Pinkerton* given that the Court has already found Petitioner fails to establish IAC regarding his counsel's failure to investigate the "hit lists."

D.    Guideline Calculations

Petitioner alleges that his counsel's failure to object to the sentencing guidelines calculated in the Presentencing Report ("PSR") constituted IAC.  Pet. at 27.  Petitioner argues that his counsel failed to object to certain upward adjustments, including:  (1) the 10-point enhancement for the death of at least one alien during the smuggling venture under U.S.S.G. § 2L1.1(b)(7)(D); (2) an enhancement for the number of aliens smuggled (100 or more) under U.S.S.G. § 2L1.1(b)(2)(C); and (3) an enhancement for having an aggravated role in criminal activity under U.S.S.G. § 3B1.1.[8]  *Id.* at 27-31.  Petitioner also alleges that

---

[8] Plaintiff also alleges that his sentence exceeded the statutory maximum and therefore must have been found beyond a reasonable doubt by a jury.  Pet. at 28.  But, as discussed *infra* in Section V(c), it appears that Defendant conflates the statutory maximum with the pre-departure sentencing guidelines.  In its Mandate, the Ninth Circuit found that the "district court did not abuse its discretion by imposing on Raul and Fidel sentences of 336 and 270 months, respectively."  *See Villarreal II*, 725 Fed. Appx. at 518 ("Although

the PSR was incorrect in stating he was the "organizer" of the venture, arguing that the guideline calculations were incorrect and that his attorney failed to do an effective job in objecting to the upward adjustments.  Pet. at 28.

The Government contends that Petitioner's arguments are without merit because his counsel did file comprehensive objections to the PSR.  Opp'n (citing ECF No. 318 ("F. Villarreal PSR Objections")).   Indeed, on January 11, 2013, defense counsel filed objections to the PSR, which included an objection to the ten-point upward adjustment for death of an alien in addition to the upward adjustment for the aggravated role.  F. Villarreal PSR.  Specifically, defense counsel argued that the assertions "regarding the death of an alien trying to cross the border should be stricken from the report" as they were based on "unsubstantiated claims made by co-conspirators which were not corroborated by any evidence."  *Id.* at 6.  Further, defense counsel argued that Petitioner "was solicited to join this conspiracy and was not an organizer/leader."  *Id.* at 12.  What is more, in the objections to the PSR, defense counsel argued for a *downward* departure for "unusually harsh confinement conditions" during pretrial custody, mitigating role in the offense, and "double counting."  *Id.* at 15-17.

With respect to the ten-point enhancement for the death of an alien, the Government argues that Petitioner did not suffer prejudice because the Court did not impose the 10-level enhancement for the death of an alien at sentencing or re-sentencing based on the Government withdrawing the request.  *See* ECF No. 425 (June 21, 2013 Sentencing Hearing) at 116; Apr. 5, 2016 Sentencing Hearing at 5.  The Court agrees with the Government and finds that Petitioner fails to adequately allege IAC based on the alleged ten-point enhancement for the death of at least one alien during the smuggling venture

---

Defendants' sentences are significantly lengthier than the top end of their pre-departure Guideline range we are not persuaded that this is the 'rare case' in which it is clear that the sentencing court committed a clear error of judgment.").  Accordingly, Petitioner's claims based on the alleged statutory maximum are unavailing.

under U.S.S.G. § 2L1.1(b)(7)(D) due to the Government's withdrawal.  *See* June 21, 2013 Sentencing Hearing at 116 ("The Court will note that there will be no adjustment for a plus-ten . . . enhancement due to the death of an undocumented alien.  The Government withdrew that request.").

As to the remaining upward adjustments, the Government asserts that the Ninth Circuit has already upheld the district court's aggravated role adjustments in its first opinion (*Villarreal I*) in addition to this Court's finding that the smuggling scheme involved 1,000 aliens in its second opinion (*see Villarreal II*).  Opp'n at 36-37.  Indeed, in its first Mandate, the Ninth Circuit found that the "district court properly found the Villarreals had aggravating roles not only with respect to the alien smuggling counts but also with respect to the bribery count in particular."  *Villarreal I*, 621 F. App'x at 888-889 ("even if the Villarreals did not receive the largest share of the proceeds, they received an enormous share").  Further, the Ninth Circuit affirmed the "district court did not err in imposing aggravating role adjustments," thereby affirming the district court's finding that the Villarreals "directed and controlled the operation."  *Id.* at 888-889.[9]  With respect to the smuggling scheme, the Ninth Circuit likewise held in its second Mandate that any error the district court made in finding that the smuggling scheme involved 1,000 aliens as opposed to 400 was harmless because it would not have impacted the Petitioner's ultimate sentence.  *Villarreal II*, 725 Fed. Appx. at 517 ("even if the evidence had supported a finding of only 400 aliens, as Defendants argue, the district court still would have selected the same ultimate sentences, thus rendering any error harmless").  Because this Court is required to follow the Mandate by the Ninth Circuit and must refrain from varying or examining it except to the extent necessary to execute its directive, Petitioner's arguments

---

[9] Petitioner's claim that his counsel failed to object to the sentencing guidelines calculated in the PSR regarding his alleged role as an organizer is directly refuted by F. Villarreal's Objections to the PSR, in which defense counsel argued that "Mr. Villarreal was solicited to join this conspiracy and **was not an organizer/leader**."  F. Villarreal PSR Objections at 12 (emphasis added).

regarding the aggravated role adjustments fail.  *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (citing *United States v. Cote*, 51 F.2d 178, 181 (9th Cir.  1995)).

### E.    Hector Cabrera's Involvement in Another Case

Lastly, Petitioner argues that defense counsel's performance was inadequate because she failed to impeach witness Hector Cabrera regarding his involvement in a separate CBP case.  Pet. at 38.  According to Petitioner, the other CBP case contained allegations of "corruption and bribery involving the 'friend' [who] testified in [Petitioner's] trial" regarding the allegations of witness tampering.  *Id.*  But Cabrera's alleged involvement in a separate CBP case has no bearing on the facts and circumstances underlying the charges and convictions against Petitioner here.    Further, Petitioner does not provide any explanation as to how or why questioning Cabrera on his involvement in the other CBP case would have impeached Cabrera or have otherwise been helpful to Petitioner's case at trial.  Thus, because the Court cannot find any prejudice against Petitioner based on defense counsel's alleged failure to impeach Cabrera, his IAC claim fails.  *See Gonzalez*, 667 F.3d at 987 (the Court need not address both *Strickland* prongs).

Accordingly, and for the reasons stated above, the Court **DENIES** Petitioner's claims of IAC.

## II.    Prosecutorial Misconduct Claims

Petitioner argues that the Government engaged in multiple instances of prosecutorial misconduct throughout the entire prosecution of his case.  Pet. at 32.  In particular, Petitioner claims prosecutorial misconduct through:  (1) the Government's alleged constructive attempted murder of Petitioner and his brother; (2) *Brady* violations; and (3) the Assistant U.S. Attorney ("AUSA") calling the Warden at the Metropolitan Correctional Center ("MCC") to have Petitioner and his brother transferred to another facility.  *Id.* at 32-39.  The Government contends, as a threshold matter, that Petitioner's claims are procedurally defaulted because he failed to previously raise his claims of prosecutorial misconduct either to this Court or in his two appeals to the Ninth Circuit.  Opp'n at 38.  Nevertheless, given the serious nature of the allegations in Petitioner's 2255 Motion

regarding prosecutorial misconduct, the Government urges this Court to address Petitioner's claims on the merits. The Court first addresses the Government's argument regarding procedural default.

An error is procedurally defaulted if a criminal defendant "could have raised a claim of error on direct appeal but nonetheless failed to do so" unless he "demonstrate[s] both cause excusing his procedural default[] and actual prejudice resulting from the claim of error." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). A claim may be excused if the legal theory or factual basis underlying the claim was unavailable at the time of the direct appeal, or if "interference by officials" prevented the claim from being brought earlier. *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007). To demonstrate prejudice, the defendant must demonstrate that the error(s) created an "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (emphasis in original) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Here, the Court agrees with the Government and finds that Petitioner is procedurally defaulted. As far as the Court is aware, this is the first instance in which Petitioner has alleged claims of prosecutorial misconduct but fails to demonstrate cause excusing his delay. Petitioner does not claim novelty of legal theory or factual basis; nor does Petitioner claim interference by government officials. In fact, Petitioner has not shown any other cause excusing his failure to raise these alleged claims of error earlier than through the instant Motion. Nevertheless, even if Petitioner could show cause, he has not demonstrated how these alleged claims caused him an actual and substantial disadvantage that infected his entire trial with constitutional errors. As articulated by the Ninth Circuit, "habeas review is not [a] substitute for an appeal." *Braswell*, 501 F.3d at 1150 (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). Thus, because Petitioner failed to previously raise these alleged violations in his two appeals to the Ninth Circuit and because Petitioner failed to demonstrate cause or prejudice, this Court finds these claims are procedurally defaulted.

However, given the serious nature of the claims brought by Petitioner against the Government, the Court finds it appropriate to address Petitioner's claims on the merits.

### A.    Constructive Attempted Murder

Petitioner alleges that at the time he was arrested in Mexico for the charges brought against him by the United States, his former defense counsel was negotiating and planning his return to the United States to face those charges. Pet. at 23-24. According to Petitioner, instead of facilitating his return to the United States, the Government affected his arrest and detention in Mexico. *Id.* at 24. After his arrest, Petitioner alleges that the location of his confinement in "Reclusorio Norte"—"Mexico's deadliest prison" according to Petitioner—amounted to the United States government engaging in constructive attempted murder. Pet. at 33. Petitioner alleges that the United States government knew that the Mexican cartels had "placed a bounty" on the lives of United States CBP Agents and as a result, Petitioner and his brother had to "fight for [] survival each day" while detained at Reclusorio Norte. *Id.* Consequently, Petitioner alleges he was "exhausted, maln[o]urished, and completely unprepared physically and mentally to prepare a defense or participate in the preparation of a defense." *Id.*

The Government does not dispute that Petitioner's former defense counsel sent a letter to AUSA Salel advising that Petitioner and his brother were prepared to self-surrender upon AUSA Salel's request, but rather contends that the Government and its respective investigating agencies were unwilling to negotiate with Petitioner and his brother given their prior engagement in the obstruction of justice. Opp'n at 29-30. The Government further contends that there is no evidence that the United States ever negotiated the Villarreal's voluntary return to the United States, no evidence that any federal agent or AUSA was aware of a bounty on the lives of United States CBP Agents, and no evidence that any federal agent sought to have them "constructively murdered." *Id.* (citing Ex. 1 at 3; Ex. 3 at 3; Ex. 4 at 3). Instead, the Government argues that the "primary goal" was to have the Villarreal brothers arrested in Mexico and extradited at the same time as the two other co-defendants. *Id.*

1    The Court finds that Petitioner's argument fails out of the gate because constructive

2    attempted murder is not a legal principle that is actionable under Section 2255.

3    Accordingly, the Court need not further analyze the facts and circumstances underlying

4    Petitioner's allegations of this alleged prosecutorial misconduct.

5            B.    _Brady_ Violations

6    Petitioner also argues that undersigned counsel, AUSA Salel, committed

7    prosecutorial misconduct by failing to provide _Brady_ information about:  (1) a pending

8    criminal investigation of Claudia Gonzalez; (2) a pending corruption investigation of

9    Hector Cabrera; and (3) Agent Sean Isham's alleged bias against Petitioner.  Pet. at 34-38.

10    Under _Brady_, the prosecution's suppression of favorable evidence to an accused

11    person upon request "violates due process where the evidence is material either to guilt or

12    to punishment[.]"  _Brady v. Maryland_, 373 U.S. 83, 87 (1963).  Favorable evidence is

13    considered material when there is a "reasonable probability" that the result of the

14    proceedings would have had a different outcome had the evidence been disclosed to the

15    defendant.  _Kyles v. Whitley_, 514 U.S. 419, 419-420 (1995).  Reasonable probability does

16    not require that the defendant would have received a different verdict with the evidence,

17    but rather asks "whether in its absence [the defendant] received a fair trial, understood as

18    a trial resulting in a verdict worthy of confidence."  _Kyles_, 514 U.S. at 434.  To establish a

19    _Brady_ violation, Petitioner must demonstrate the following:  "(1) the evidence at issue is

20    favorable to the accused, either because it is exculpatory or because it is impeaching; (2)

21    the evidence was suppressed by the government, regardless of whether the suppression was

22    willful or inadvertent; and (3) the evidence is material to the guilt or innocence of the

23    defendant."  _United States v. Sedaghaty_, 728 F.3d 885, 899 (9th Cir. 2013).

24            i.    _Investigation of Claudia Gonzalez_

25    Petitioner alleges that the Government failed to provide _Brady_ information to

26    Petitioner regarding a pending criminal investigation involving co-defendant Claudia

27    Gonzalez "where she became sexually involved with one of the Correctional Officers

28    assigned to watch over her [at the MCC]" in San Diego.  Pet. at 34.  According to Petitioner,

because his defense counsel did not know about the other alleged investigation, counsel was "precluded . . . from impeaching her obviously shifting stories." *Id.* at 37. The Government argues that this Court should reject Petitioner's claim as frivolous because there was no criminal investigation of Claudia Gonzalez related to her alleged sexual involvement with a correctional officer[10] nor any other credible evidence that Claudia Gonzalez was the target of any investigation at the time of her trial testimony. Opp'n at 42. Regardless, the Government contends that trial counsel did, in fact, impeach Claudia Gonzalez at trial eliciting certain admissions including her expectation that she would receive credit for time served. *Id.* at 42-43.

The Court is not persuaded that Claudia Gonzalez's cooperation with the Government in a separate sexual assault case regarding a correctional officer had any bearing on her role as a witness for the United States such that any non-disclosure on the part of the Government would rise to a *Brady* violation. While the Court acknowledges that favorable evidence to an accused person "includes evidence that would help the defendant impeach a witness," the Court sees no reason why defense counsel's ability to question Ms. Gonzalez's credibility would have been precluded. *Sanders v. Cullen*, 873 F.3d 778, 802 (9th Cir. 2017). Indeed, despite Petitioner's alleged lack of knowledge of the separate investigation, defense counsel for Petitioner's brother, Raul, successfully evoked testimony from Ms. Gonzalez at trial demonstrating that she knew the purpose of cooperating with the Government was an attempt to reduce her sentence, affirming her "complete dislike of incarceration" and "absolute desire to be home with [her children]." ECF No. 413 (July 27, 2013 Trial Tr. at 2710, 2714). As stated by another district court, "[t]here is nothing complicated about potential bias when a witness receives favorable

---

[10] The Government clarifies that Ms. Gonzalez was the victim of inappropriate sexual advances by Correctional Officer McKinney, who was later prosecuted and sentenced for sexual assaults on Ms. Gonzalez and other female inmates at the MCC. Opp'n at 42; *see also* ECF No. 292.

1   treatment from the Government in exchange for his or her testimony." *United States v.*
2   *Ervin*, 2014 WL 2993750, at *1 (D. Mont. July 2, 2014).

3        After reviewing the record, the Court finds that Petitioner's concerns regarding Ms.
4   Gonzalez's credibility were sufficiently raised through cross-examination. *See Ervin*, 2014
5   WL 2993750, at *2 (concerns of credibility regarding a cooperating witnesses can be raised
6   through cross-examination, jury instructions, and argument). Accordingly, the Court finds
7   no *Brady* violation based on the alleged investigation of Ms. Gonzalez.

8                    ii.    *Investigation of Hector Cabrera*

9        In a similar fashion, Petitioner asserts another *Brady* violation arguing that the
10  Government failed to produce evidence of an investigation with Hector Cabrera. Pet. at
11  38. As discussed *supra,* Petitioner posits that Mr. Cabrera was "involved in another CBP
12  case alleging corruption and bribery involving the 'friend' [who] testified in [his] trial as
13  the one who rescued him from [the Villarreals]" regarding the allegations of witness
14  tampering. *Id.* Petitioner argues that he only discovered the existence of this investigation
15  through Raul seeing it on the defense table at trial in Attorney Nick's (Raul's counsel)
16  possession. *Id.* Petitioner alleges that had his defense counsel known of the other case
17  involving Mr. Cabrera, she could have used it to impeach his testimony.

18       In opposition, the Government contends that Petitioner's claim regarding Mr.
19  Cabrera's other alleged case is frivolous for two reasons. First, the Government asserts
20  that there was no state or federal investigation of Mr. Cabrera at the time of trial. Opp'n at
21  43 (citing Ex. 1 at 4; Ex. 4 at 4). Second, the Government argues that "since documents
22  related to Hector Cabrera and his friend were actually provided to trial counsel," those
23  documents were effectively provided to the Villarreals and, as a result, there was no *Brady*
24  violation. Opp'n at 43-44. And, in any event, the Government argues that trial counsel
25  successfully used the documents to impeach Mr. Cabrera and therefore Petitioner suffered
26  no prejudice. *Id.* at 44.

27       The Court is unpersuaded by Petitioner's argument that any alleged investigation
28  regarding Mr. Cabrera arises to a *Brady* violation. For starters, Petitioner fails to show that

the evidence was, in fact, suppressed by the Government.  To be sure, Petitioner's own allegations seem to suggest the opposite presumption—namely that Petitioner's counsel likely had possession of the alleged investigation given the fact that Petitioner claims Raul's counsel had possession of the investigation documents. Pet. at 38.  However, even assuming the Government did not hand over the documents containing Mr. Cabrera's alleged investigation to Petitioner's defense counsel, the Court finds no "reasonable probability" that the result of the proceedings would have had a different outcome had the alleged investigation regarding Mr. Cabrera been disclosed to Petitioner. *See Kyles*, 514 U.S. at 419.  Accordingly, the Court finds no *Brady* violation based on the alleged investigation of Mr. Cabrera.

### iii.   *Agent Sean Isham's Alleged Bias*

Petitioner also argues that the prosecution improperly relied on testimony from Agent Sean Isham, who Petitioner claims had "animus against [him] long before th[e] case began." Pet. at 40.  According to Petitioner, Raul, had filed multiple complaints against Agent Isham regarding "racist remarks toward him." *Id.*  Petitioner suggests that the prosecution's reliance on Agent Isham as a witness demonstrates both "foul play" and IAC on the part of his attorney for not impeaching him.[11]  The Government, however, claims Petitioner's arguments fail because:  (1) the AUSA was not aware of the impeachment information; (2) there was no *Brady* or *Giglio* violation because Petitioner's brother knew about the alleged bias based on his purported filing of multiple complaints; and (3) the Villarreal brothers suffered no prejudice as a result of the lack of impeachment by trial counsel because of Sean Isham's insignificant role at trial.  Opp'n at 47-48.

---

[11] To establish IAC, Petitioner must show that counsel's performance did not meet the standard of "reasonably effective assistance," and that counsel's deficient performance prejudiced Petitioner. *Strickland*, 466 U.S. at 687.  But Petitioner does not explain how his counsel's failure to impeach Agent Isham's testimony fell below the standard of reasonably effective performance nor how it prejudiced Petitioner.  As a result, Petitioner fails to establish an IAC claim regarding Agent Isham's alleged bias.

Under the suppression prong of *Brady*, if "the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence," the Government's failure to bring the evidence to the direct attention of the defense does not constitute "suppression." *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir.2006) (finding the records in question were not *Brady* material because "Petitioner possessed the salient facts regarding the existence of the records that he claims were withheld"). Here, Petitioner alleges that his brother had filed multiple complaints against Agent Isham regarding the racist remarks toward his brother—implying that he knew of such filed complaints. Consequently, according to Petitioner's own account, he "possessed the salient facts" that he claims were withheld. *See id.* Accordingly, Petitioner's *Brady* claim regarding Agent Sean Isham fails.

C.    Request for Villarreals to be Transferred From MCC

Petitioner claims that AUSA Salel committed prosecutorial misconduct by calling the Warden at the MCC to have Petitioner and his brother transferred to another facility. Pet. at 39.  Petitioner claims that this transfer was undertaken to create further distance between him and his elderly parents who allegedly visited regularly. *Id.*  The Government contends that there is no credible evidence that AUSA Salel called the Warden at MCC to create undue hardship for the Villarreal brothers or to make it more difficult for their parents to visit them. Opp'n at 44.  The Government also argues that Petitioner has not alleged and cannot demonstrate any resulting prejudice. *Id.* at 46.  Finally, the Government contends that inmates do not have a constitutional right to the location of their incarceration and, as a result, Petitioner does not state a cognizable claim under a 2255 motion. *Id.*

The Court agrees with the Government and finds that Petitioner fails to state a viable claim for his 2255 Motion.  The Supreme Court has consistently held that inmates are not entitled to due process protections in relation to discretionary transfers between prison facilities. *See, e.g.*, *Montanye v. Haymes*, 427 U.S. 236, 242-43 (1978) (finding no constitutional right to be held in a particular prison); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"). Thus, the

Court need not consider the veracity of Petitioner's allegation that AUSA Salel called the Warden of the MCC or whether Petitioner was ever actually transferred to another institution given that "prisoners ha[ve] no right to be at any particular prison[.]" *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) (transfers are left to the discretion of prison officials).

### III.    Due Process Violations

As a general matter, the Fourteenth Amendment protects against the deprivation of "life, liberty, or property" without due process of law.  U.S. CONST. amend. XIV, § 1. Therefore, to succeed on a due process claim, an individual must demonstrate that he was deprived of a protected liberty or property interest. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972).

Petitioner contends that at his trial he experienced a violation of his due process rights based on the following:  (1) CBP and Immigration and Customs Enforcement ("ICE") agents' presence at the trial; (2) witness Sandra Muro's use of a cell phone on the witness stand; and (3) meetings with the Government outside the presence of his counsel. Pet. at 41-42.  Like Petitioner's claims of prosecutorial misconduct, the Government argues that Petitioner is procedurally defaulted because he failed to raise such alleged due process violations either to this Court or in his two appeals to the Ninth Circuit.  Opp'n at 38.

As described previously, an error is procedurally defaulted if a criminal defendant "could have raised a claim of error on direct appeal but nonetheless failed to do so" unless he "demonstrate[s] both cause excusing his procedural default[] and actual prejudice resulting from the claim of error." *Johnson*, 988 F.2d at 945.  Thus, like Petitioner's prosecutorial misconduct claims, Petitioner's due process claims similarly fail for the same reason:  they are procedurally defaulted because Petitioner fails to demonstrate both cause and prejudice.  Nevertheless, given the serious nature of Petitioner's allegations, Court finds it appropriate to address Petitioner's claims on the merits.

///

///

A.      Government Agents' Presence at Trial

Petitioner alleges that during the "entirety of [his] trial, there were multiple CBP and . . . ICE agents that were in attendance who sat behind the prosecutor's table."  Pet. at 40. According to Petitioner, some of the agents who later testified, "spent a majority of the time in the courtroom either verbally or non-verbally intimidating and threatening" Petitioner and his brother.  *Id.*  Petitioner contends that both the Government and the Court knew this behavior was occurring but "did nothing more than pay lip service to keeping the proceedings civil."  *Id.*  Without cite to authority, Petitioner appears to suggest the alleged intimidation tactics and threats by government agents rendered the trial fundamentally unfair.  The Government recognizes that while there was some "non-verbal communication" that occurred between an agent and Mr. Nick during opening statements, the Court admonished all parties in the courtroom early on by explaining "[i]t's poker face for everyone" and that the Court would not tolerate any nodding, making faces, or any other non-verbal communication from anyone in the courtroom.  Opp'n at 52 (citing July 6, 2012 Trial Tr. at 404-408).  According to the Government, after the Court's initial "poker face" admonishment there was no credible evidence of any other intimidating or threatening communication by any Government agent toward Petitioner or his brother.  *Id.*

A trial court error may violate due process if it renders a criminal trial "fundamentally unfair."  *Chambers v. Mississippi*, 410 U.S. 284, 290 (1973).  However, to establish habeas relief based on trial error, a federal petitioner must establish that the trial error resulted in "actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict."  *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (internal quotations and citations omitted).  While precedential rulings and analysis regarding trial court errors typically relate to a trial court's evidentiary rulings, here Petitioner suggests that the Court's handling of the alleged intimidation and threats by the government agents amounted to a trial court error.  However, aside from Petitioner's general allegations of intimidation and

threats by certain Government agents, Petitioner fails to provide additional detail or evidence supporting his claims to suggest that actual prejudice resulted. Accordingly, Petitioner's due process claim regarding the Government agents' presence at trial fails.

### B.    Witness (Sandra Muro) Coached by Cell Phone

Petitioner also asserts that his due process rights were violated when cooperating witness, Sandra Muro, allegedly used her cell phone on the witness stand "to be coached on her testimony[.]" Pet. at 41-42. Petitioner contends that after the Court told Ms. Muro that she should not be using her phone during testimony, that was the last it was spoken of and "there was no admonishment of the Court to put the phone away or surrender it to Marshals for the duration of her testimony." *Id.* at 42. Petitioner argues that the use of her cell phone tainted her testimony, particularly given the fact that her testimony was in relation to her cooperation agreement with the Government and because her plea agreement was contingent upon her testifying against Petitioner and his brother. *Id.* at 43. The Government, however, argues that Ms. Muro was not being "coached" on the stand, but rather that Ms. Muro used her cell phone while counsel and the Court were discussing an issue during side bar. Opp'n at 50. According to the Government, after the Court was informed that Ms. Muro had used her cell phone during side bar, the Court addressed the situation.

The Court finds insufficient evidence with which to deem Ms. Muro's brief, albeit unusual, use of her cell phone a due process violation. Indeed, Petitioner's allegations that Ms. Muro was "coached" provide no detail as to who was allegedly coaching her or any particulars regarding any conversation. *See Skains v. Lockler*, 2009 WL 230037, at *8 (E.D. Cal. Jan. 20, 2009), *report and recommendation adopted*, No. CIVS06127LKK CHS, 2009 WL 806829 (E.D. Cal. Mar. 26, 2009), *aff'd sub nom. Skains v. California*, 386 F. App'x 620 (9th Cir. 2010) ("petitioner's vague accusations regarding the coaching of witnesses do not demonstrate a due process violation"). While the Court recognizes that in certain instances witness coaching may rise to a due process violation, here, Petitioner

1  fails to point to anything in the record suggesting that Ms. Muro was, in fact, coached on

2  her testimony.  Without more, the Court finds this claim meritless.

3                    C.    Meetings Without Defense Counsel

4          Petitioner alleges that his due process rights were violated because he and his brother

5  were "hauled" into the U.S. Attorney's Office by the U.S. Marshals for "discussions about

6  the case," whereby their retained "counsel was purposely kept from these meetings."  Pet.

7  at 41.  Petitioner also argues that on several occasions when he was "hauled in handcuffs

8  to the office of the AUSA," he was "intimidated by the lead agent" and "mishandle[d] and

9  threatened by the agents."  *Id.* at 46.  The Government acknowledges that Petitioner, his

10  brother, and their former defense counsel engaged in a series of meetings at the U.S.

11  Attorney's Office, however, according to the Government, those meetings were requested

12  by defense counsel to "review the discovery, discuss factual issues, and consider global

13  plea offers."  Opp'n at 53-54.  As for Petitioner's allegations that he and his brother were

14  intentionally separated from their respective defense counsel to attend "unrequested

15  meetings," the Government contends those allegations are "simply false."  *Id.* at 54.

16          The Court recognizes that in certain instances government agents meeting with a

17  defendant outside the presence of counsel may rise to a separate constitutional violation

18  under the Sixth Amendment.  For example, in addition to defense counsel's presence at

19  trial, the Sixth Amendment guarantees that a defendant "need not stand alone . . . at any

20  stage of the prosecution, formal or informal, in court or out, where counsel's absence might

21  derogate from the accused's right to a fair trial."  *United States v. Wade*, 388 U.S. 218, 226

22  (1967).  Indeed, in *Massiah v. United States*, the Supreme Court found that defendant's

23  own incriminating statements, which were obtained by federal agents after he had been

24  indicted and in the absence of his retained counsel, could not constitutionally be brought

25  in as evidence against him at trial.  377 U.S. 201, 207 (1964).  Similarly, in *Wade*, the

26  Supreme Court found that a post-indictment lineup was a "critical stage of the prosecution

27  at which [Wade] was 'as much entitled to such aid (of counsel) . . . as at the trial itself.'"

28  388 U.S. at 237 (citing *Powell v. State of Alabama*, 287 U.S. 45, 57 (1932)).  But unlike

the evidence admitted in *Massiah* or *Wade*, here Petitioner points to no evidence obtained through the alleged meetings that was introduced at trial.  Given that "the remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression," no remedy is available to Petitioner.  *United States v. Morrison*, 449 U.S. 361, 366 (1981) (finding "no effect of constitutional dimension which needs to be purged to make certain that respondent has been effectively represented and not unfairly convicted").

Accordingly, Petitioner's allegations regarding purported meetings that took place outside the presence of his counsel fail.

### IV.  Judicial Bias

Petitioner also alleges that the Court demonstrated judicial bias by:  (1) increasing Petitioner's sentence beyond the statutory maximum, in part due to Petitioner "remaining mum"; (2) increasing Petitioner's sentence because of lack of cooperation with the Government; (3) ordering an "excessive fine"; and (4) relying on "acquitted conduct and vacated conduct to arrive at the sentence" after the case was remanded.  Pet. at 44-46. Petitioner argues that even if each allegation does not separately establish a due process violation, when considered together they had the cumulative effect of denying Petitioner due process.  *Id.* at 46.  The Government contends that Petitioner's judicial bias claims fail because he presents no evidence that this Court relied upon knowledge acquired outside the proceedings or demonstrated antagonism that would render a fair judgment impossible. Opp'n at 55-56.  Further, the Government argues that most of the sentencing issues raised have already been rejected by the Ninth Circuit in *Villarreal II.  Id.*

It is well-established that under the Due Process Clause a criminal defendant is entitled to "a fair trial in a fair tribunal[.]"  *In re Murchison*, 349 U.S. 133, 136 (1955); *see also Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).  A petitioner alleging a claim of judicial bias has a "difficult burden of persuasion to carry" and "must overcome a presumption of honesty and integrity in those serving as adjudicators[.]"  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  A due process violation may occur based on an appearance of bias where a judge has a personal or pecuniary interest in the outcome, became

"embroiled in a running, bitter controversy with one of the litigants," or assumes a role as "part of the accusatory process." *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007) (collecting cases). To sustain a claim of judicial bias a petitioner must also establish that "a court has prejudged, or reasonably appears to have prejudged, an issue." *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992) (citations omitted). Remarks or opinions, even critical or hostile remarks, made by a judge throughout the course of a trial will not ordinarily demonstrate bias unless they "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). With respect to habeas proceedings, judicial bias may only be found if "it affirmatively appears in the record that the court based its sentence on improper information." *Banks v. State of California*, 208 F.3d 220, 2000 WL 152775, *1 (9th Cir. 2000) (unpublished) (citing *Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978)).

As a preliminary matter, the Court has already addressed Petitioner's apparent conflation of the statutory maximum with the pre-departure sentencing guidelines. *See supra* Section I.D.; *see also Villarreal II*, 725 Fed. Appx. at 518 (explaining that "[a]lthough Defendants' sentences are significantly lengthier than the top end of their pre-departure Guidelines ranges, we are not persuaded that this is the 'rare case' in which it is clear that the sentencing court committed a clear error of judgment" and "[i]t is evident from the record that the court thought that Defendants' abuse of their official positions . . . , coupled with Defendants' violent efforts to obstruct justice, warranted sentences well above the pre-departure Guideline ranges"). Thus, Petitioner's contention that the Court imposed a sentence beyond the statutory maximum based on judicial bias therefore fails at the outset.

Petitioner likewise fails to present any evidence whatsoever that the Court relied on any type of personal or pecuniary interest, much less that the Court revealed such a high degree of favoritism toward the Government or antagonism against Petitioner thereby rendering a fair judgment impossible. Aside from Petitioner's vague reference to the Court's remark on Petitioner remaining "mum" at sentencing, Petitioner provides no other

evidence to "overcome a presumption of [the Court's] honesty and integrity." *Withrow*, 421 U.S. at 47; *see also Lang v. Callahan*, 788 F.2d 1416, 1419 (9th Cir. 1986) (petitioner "has not demonstrated that his right to an impartial tribunal was violated by the court's remarks at sentencing").

In any event, the Ninth Circuit already affirmed the length of Petitioner's sentence with respect to this Court's consideration of Petitioner's silence, Petitioner's lack of cooperation with the Government, and this Court's reliance on Petitioner's acquitted, dismissed, and uncharged conduct. *See Villarreal II*, 725 Fed.Appx. 515. Specifically, the Ninth Circuit found that the Court's comment regarding remaining mum, when "considered in context, was an explanation for the relatively lenient sentences imposed in cases that the court was comparing to this case for purposes of 18 U.S.C. § 3553(a)(6)" and explained that the district court "did not impermissibly draw adverse inferences from [Petitioner's] silence or punish [Petitioner] for failure to cooperate." *Id.* at 517-518. As to the Court's reliance on Petitioner's conduct, the Ninth Circuit concluded that "the district court did not err by considering acquitted, dismissed, and uncharged conduct when it compared [Petitioner] to similarly situated defendants for purposes of § 3553(a)(6)," noting that "a court will almost [always] necessarily have to consider the facts of the cases, including acquitted conduct, in order to tell whether the defendants are similarly situated and, if so, whether any sentencing disparities are 'unwarranted.'" *Id.* at 518. Accordingly, the Ninth Circuit ultimately upheld Petitioner's sentence of 270 months. *Id.* Because Petitioner alleges no specific facts as to how the Court demonstrated judicial bias, the Court must apply the rule of mandate with respect to Petitioner's sentencing which prevents a district court from varying or examining a mandate of an appellate court "for any purpose other than executing it." *Hall*, 697 F.3d at 1067 (citing *Cote*, 51 F.2d at 181).

Petitioner also argues that this Court ordered an "excessive fine" of $250,000 showing bias against Petitioner. Pet. at 45. However, other than the amount of the fine itself, Petitioner points to no concrete facts or allegations establishing that Petitioner's fine was somehow a product of this Court's prejudgment or antagonism against Petitioner.

1   Accordingly, the Court finds that Petitioner's conclusive and speculative claims of judicial

2   bias lack merit.  *See In re Complaint of Jud. Misconduct*, 584 F.3d 1230, 1231 (9th Cir.

3   2009) (dismissing claims of judicial bias based solely on "vague accusations and

4   convoluted demands").

5       Finally, Petitioner argues that even if each allegation of judicial bias does not

6   independently establish a due process violation, when considered together they have the

7   "cumulative effect" of a due process violation.  Pet. at 46.  The Court recognizes that "[t]he

8   cumulative effect of multiple errors can violate due process even where no single error

9   rises to the level of a constitutional violation or would independently warrant reversal."

10  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  Under the cumulative effects doctrine,

11  the Ninth Circuit has granted habeas relief in circumstances where there is "unique

12  symmetry" of harmless errors such that each error "starkly amplifie[s] the prejudice caused

13  by the other[.]"  *Id.* at 933.  But here, the Court finds no unique symmetry of error.  For

14  starters, upon review of the record, the Court is unable to find any evidence of judicial bias.

15  However, even if there was any indication of bias on the part of the Court, the Court finds

16  that any combination of alleged imperfections did not render Petitioner's trial and

17  sentencing "fundamentally unfair."  *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir.

18  2011) (claimed errors at sentencing did not have a "synergistic effect").  Accordingly, the

19  Court finds that Petitioner's claims of judicial bias fail.

20      **V.    Unlawful and Unconstitutional Sentence**

21      Petitioner contends that his sentence was "unlawful and unconstitutional" alleging

22  that:  (1) the Court's institution of a $250,000 fine violates the Eighth Amendment; (2) the

23  Court's consideration of the acquitted, dismissed, or uncharged conduct violates the

24  Constitution and *Booker, et al.*; and (3) Petitioner's sentence exceeds the statutory

25  maximum for the money laundering count.  Pet. at 47-48.  The Government, however,

26  argues that Petitioner's $250,000 fine does not violate the Eighth Amendment because it

27  was not grossly disproportionate to the convicted crimes, the Court's consideration of

28  acquitted and dismissed conduct does not violate the principles of established precedent,

and Petitioner's sentence did not exceed the statutory maximum because this Court is entitled to stack multiple counts of a conviction.

### A.    $250,000 Fine

The Court agrees with the Government and finds that the $250,000 fine does not violate the Eighth Amendment.  The Eighth Amendment prohibits "excessive fines . . . [and] cruel and unusual punishments."  U.S. CONST. amend. VIII.  The Supreme Court has articulated that a fine runs afoul to the Eighth Amendment if it "is grossly disproportional to the gravity of the defendant's offense."  *United States v. Bajakajian*, 524 U.S. 321, 337 (1998); *see also United States v. Feldman*, 853 F.2d 648, 664 (9th Cir. 1988).  Within the Ninth Circuit, courts consider the following four factors in determining whether a fine is "grossly disproportional" to the underlying offense:  "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense."  *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020).

Here, the Court finds that all four factors support a fine of $250,000.  First, as the Court has previously found, "[t]he nature and extent of the disruption and the importance of the government function affected . . . sets this case well outside of the heartland of cases dealing with government employee corruption along the southwest border."  Apr. 5, 2016 Sentencing Hearing at 28-30 (describing this case as "a highly unusual and egregious case" whereby Petitioner and his brother "callously disregarded their assigned duties within their respective areas of responsibility along the border in order to obtain profit").

Second, this case involved a series of criminal activity whereby Petitioner was not only convicted of the underlying offense of bringing aliens into the United States for financial gain, but also was found to have obstructed justice during the investigation of that conduct.  *Id.* at 12 ("The Court finds that the Defendants' obstruction of justice and attempt to obstruct justice directly impacted and were intended to impact and interfere with the investigation and prosecution of this case.").

Third, other penalties (aside from the $250,000 fine) may be imposed for the offense including a more significant, cumulative fine, and a cumulative statutory maximum of up to 180 years in custody.  *See* U.S.S.G. § 5G1.2.  As to the fine, all thirteen felony convictions permit a fine under the statutory provisions and the United States Sentencing Guidelines.  Counts 1-12[12] each carry a fine in the amount of $250,000, while Count 15 provides a fine of "not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater[.]"  18 U.S.C. § 3571(b)(3); 18 U.S.C. §§ 1956(a)(1) and (h).  Further, the Sentencing Guidelines provide that the Court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."  U.S.S.G. § 5E1.2(a); *see also United States v. Ortland*, 109 F.3d 539, 549 (9th Cir. 1997) ("the defendant has the burden of proving that he cannot pay a fine; in the absence of that proof, the court must impose a fine").

Here, the Court finds that Petitioner has failed to establish that he is unable to pay and is not likely to become able to pay any fine.  To the contrary, throughout the investigation and up through sentencing, Petitioner failed to provide the Government or United States Probation with any information as to his financial circumstances whatsoever (*e.g.*, total amount of bribe money, location of the money, if and how much money was transferred to others, and the amount of money transferred to offshore bank accounts or stored in Mexico).  What is more, the estimated bribes paid out to Petitioner and his brother totaled somewhere between $700,000-$1,000,000.  *See* Apr. 5, 2016 Sentencing Hearing at 57.  Though Petitioner argues that his imposed fine will not "accomplish[] any interests of justice" because he "will be financially hobbled for the rest of [his] natural life while shackled with this debt," (Pet. at 47), without proof that Petitioner is unable to pay, "the

---

[12] Count 1 charged Petitioner with conspiracy to bring aliens to the United States for financial gain, Counts 2-12 charged Petitioner with bringing aliens to the United States for financial gain, and Count 15 charged Petitioner with conspiracy to launder money through international promotion.  ECF No. 281.

court must impose a fine." *Ortland*, 109 F.3d at 549.[13]  And, aside from the Court's imposition of a fine, the cumulative statutory maximum of Petitioner's convicted counts—amounting to 180 years in custody—further demonstrates the severity of the crimes.

Finally, the Court finds the extent of the harm—which included Petitioner's systematic, pervasive, reprehensible, and offensive conduct gravely impacting national interests—undoubtedly justifies a fine of $250,000.  *See* Apr. 5, 2016 Sentencing Hearing at 44.  Under these circumstances, the Court finds that Petitioner's fine of $250,000 is not grossly disproportionate and therefore does not violate the Eighth Amendment.

## B.    Acquitted, Dismissed, or Uncharged Conduct

Petitioner argues that the Court's consideration of acquitted, dismissed, and uncharged conduct violates the Constitution and established precedent in *Booker, et al.* Pet. at 48.  In particular, Petitioner argues that the "facts of the witness tampering," which he alleges were used in the upward departures to justify his sentence, were "acquitted by [the] jury" and therefore run afoul to *Booker, et al.  Id.* at 49.  Further, Petitioner argues that the dismissed conduct—bribes by public officials—was inappropriately considered by this Court in sentencing as it was vacated by the Ninth Circuit.  *Id.*  The Government, however, contends that these sentencing issues were previously considered by the Ninth Circuit and Petitioner should be barred from re-litigating the same sentencing issues in the instant Motion.  Opp'n at 62.  In any event, the Government argues that an upward departure based on acquitted and dismissed conduct does not violate Supreme Court precedent.  *Id.*

As a threshold matter, the Court agrees with the Government that Petitioner's sentencing issues have already been considered.  Indeed, the Ninth Circuit already found

---

[13] Indeed, the Court previously noted the same during the Sentencing Hearing on April 11, 2016—reasoning that the "Court infers that the money [from the bribes] is still there for purposes of paying a fine," explaining "[t]he Defendants do have a burden to show that they aren't able to pay one and that burden wasn't met in the case."  Sentencing Hearing Apr. 11, 2016, at 6.

that "[t]he district court did not err by considering acquitted, dismissed, and uncharged conduct when it compared Defendants to similarly situated defendants for purposes of § 3553(a)(6)." *Villarreal II*, 725 Fed. Appx. at 517. Based on the law of the mandate, this Court is not permitted to vary or examine a mandate of an appellate court "for any purpose other than executing it." *Hall*, 697 F.3d at 1067 (citing *Cote*, 51 F.2d at 181).

Further, as the Government aptly notes, the holdings in neither *United States v. Booker*, 543 U.S. 220 (2005) nor *Apprendi v. New Jersey*, 530 U.S. 466 (2000) prevent a court from considering acquitted, dismissed, or uncharged conduct in this case. Instead, *Booker's* ruling pertained to sentences exceeding the prescribed statutory maximum and reaffirmed the Supreme Court's prior holding in *Apprendi* finding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Because the Court did not violate the statutory maximum (*see infra*), the holdings from *Booker* and *Apprendi* do not salvage Petitioner's argument.

## C.    Petitioner's Sentence and Statutory Maximum

Finally, Petitioner argues that his sentence exceeded the 20-year statutory maximum for the money laundering count. Pet. at 48-49. The Government, however, avers that Petitioner's position ignores the fact that he was convicted of 13 felony counts and that this Court is entitled to stack multiple counts to arrive at the total punishment. Opp'n at 64.

Petitioner's apparent frustration with the Court's imposition of consecutive sentences is unavailing. The Federal Sentencing Guidelines permit the sentencing court to determine the total punishment and impose that total punishment[14] on each count. U.S.S.G.

---

[14] "Total punishment" "is determined by the court after determining the adjusted combined offense level and the Criminal History Category and determining the defendant's guideline range[.]" *See* Application Notes to U.S.S.G. § 5G1.2.

§ 5G1.2(b). Under the Guidelines, when "the sentence imposed on the count carrying the highest statutory maximum is *less* than the total punishment, then the sentence imposed on one or more of the other counts *shall run consecutively*, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d); *see also Oregon v. Ice*, 555 U.S. 160, 170-172 (2009) (the sentencing court has the discretion to impose a consecutive sentencing without a finding from a jury); *United States v. Buckland*, 289 F.3d 558, 571 (9th Cir. 2002). Here, the highest statutory maximum was 20 years in custody for Count 15 (conspiracy to launder money through international promotion). However, because the Court found that "a reasonable total punishment would not be satisfied without a sentence including consecutive time in order to reach an appropriate sentence," the Court ultimately sentenced Petitioner in the following manner: Counts 1 through 3 and Counts 5 through 12 to run concurrently with Count 4 for 180 months in custody, in addition to 90 months of Count 15 to run consecutive to Count 4, for a total custodial term of 270 months (22.5 years). Sentencing Hearing Apr. 5, 2016 at 54-56; Sentencing Hearing Apr. 11, 2016 at 10-11. Thus, this Court's sentence did not exceed the statutory maximum.

Accordingly, Petitioner's request to vacate, set aside, or correct his sentence is **DENIED.**

## **EVIDENTIARY HEARING**

In his 2255 Motion, Petitioner asks this Court to order further evidentiary discovery regarding his assertions, order a new trial, resentencing, or any other relief it deems appropriate. Pet. at 51. In his separate Motion for an Evidentiary Hearing, Petitioner requests that this Court hold an evidentiary hearing to resolve disputed facts. ECF No. 616 at 5. Petitioner also avers that "due to the repeated errors on Petitioner's case and failure in issuing timely rulings on his motions for relief," this Court should consider reassigning the case to another District Judge. *Id.*

The Court finds Petitioner's request without merit given that the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b).  The record plainly demonstrates a majority of Petitioner's claims are either barred because they have previously been rejected by the Ninth Circuit or procedurally defaulted.  Any of Petitioner's factual allegations that remain are refuted by the record.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing").  Accordingly, Petitioner's request for an evidentiary hearing is **DENIED.**

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules following 28 U.S.C. § 2254, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in Section 2255 cases such as this.  A habeas petitioner may not appeal the denial of a Section 2255 habeas petition unless he obtains a certificate of appealability from a district or circuit judge.  28 U.S.C. § 2253(c)(1)(B); *see also United States v. Asrar*, 116 F.3d 1268, 1269-70 (9th Cir. 1997) (holding that district courts retain authority to issue certificates of appealability under AEDPA).  A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To meet this threshold showing, a petitioner must show that:  (1) the issues are debatable among jurists of reason, (2) that a court could resolve the issues in a different manner, or (3) that the questions are adequate to deserve encouragement to proceed further.  *Lambright v. Stewart*, 220 F.3d 1022, 1025-26 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000)).

Based on the Court's review of the record, this Court finds no issues are debatable among jurists of reason and no issues could be resolved in a different manner.  This Court further finds that no questions are adequate to deserve encouragement to proceed further.  Therefore, Petitioner is not entitled to a certificate of appealability.

///

///

///

## <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED:

     1.  Petitioner's Motion to Vacate under 28 U.S.C. § 2255 is **DENIED**;

     2.  Petitioner's Request for an Evidentiary Hearing is **DENIED**; and

     3.  Petitioner is **DENIED** a certificate of appealability.

**IT IS SO ORDERED**.

DATED:  November 13, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE